# DECISIONS

## OF THE

# Supreme Court of Florida.

### JUNE TERM, A. D. 1899.

THE STATE OF FLORIDA *ex rel.* WILLIAM B. LAMAR, ATTORNEY-GENERAL, AND BENJAMIN S. LIDDON AND JOHN M. BARRS AS SPECIAL COUNSEL FOR THE RAILROAD COMMISSIONERS OF THE STATE OF FLORIDA, PLAINTIFF IN ERROR, VS. THE JACKSONVILLE TERMINAL COMPANY, DEFENDANT IN ERROR.

Appellate Practice in Railroad Commission Cases—Chapter 4700, Laws of 1899, Construed—Constitutional Law, Special Laws, Equal Protection of Laws.

1. The word "appeals" is used in Section 23 of Chapter 4700, laws of 1899, in its popular, broadest and most comprehensive sense, and therein signifies any and all appropriate appellate proceedings provided by law for reviewing judgments at law, orders and decrees in equity, and other reviewable orders, judgments or decrees, whether by writ of error, or by an appeal proper in its strictest technical sense. The purpose of the section, in the class of cases it provides for, was not to add to, modify or change any of the recognized and differentiated modes of procedure by which cases at law and in equity are respectively transferred for review from inferior to superior courts, except in the one particular of the *return day* of such appellate proceedings, whether by writ of error or by technical appeal, when applied to cases falling within the provisions of the act, but

left all such modes of procedure to be respectively followed in cases arising under the act with their differentiating applicability—writs of error to be applied to cases at law, and technical appeals to causes in chancery, but making all of them, when utilized for the review of causes *"brought under the provisions of the act," returnable* to the appellate courts *within thirty days from the date they are taken or issued.*

2. Section 23 of Chapter 4700, laws of 1899, does not violate Section 20 of Article III of the Florida Constitution of 1885, that prohibits the legislature from passing special or local laws regulating the practice in courts of justice. The constitutional limitation mentioned does not prohibit legislation reasonably classifying persons and things, and when such legislation equally affects *all the persons or things* of the class it creates it is a general and not a special law. The said Section 23 of said act, for the purpose of appellate review, groups together, *as a class, all cases* "brought under the provisions of the act," and makes the appellate proceedings therein, whether they be writs of error or technical appeals, *in all of such cases, returnable* within thirty days irrespective of the kind or nature of the case. The distinguishing feature of the *class* of cases thus provided for is that they must have been "brought under the provisions of said act," Chapter 4700.

3. A mandamus, issued by the Circuit Court on the relation of the 'Attorney-General by the order of the State Railroad Commissioners, to enforce an order made by such commissioners under the provisions of Chapter 4700, laws of 1899, is a case "brought under the provisions" of such act, and when carried for review to the appellate court by writ of èrror *is* such a case as Section 23 of said act requires the writ of error to be made returnable within thirty days from the date of its issuance, and *is* such a case as said section of said act requires the hearing and determination of by the appellate court in advance of other causes on its dockets.

4. The provisions of section 1 of Article XIV of the amendments to the constitution of the United States, forbidding State legislation that denies to any person the equal protection of the laws, does not preclude legislation reasonably classifying persons and things, and, generally, it only requires the same means and methods to be applied impartially to all the constituents of a class so that the law shall operate equally and uniformly upon

all persons in similar circumstances. The test of the *reason-ableness* of a classification is that it must be based upon some difference that bears a just and proper relation to attempted classification, and is not a mere arbitrary selection. Section 23 of Chapter 4700, laws of 1899, does not violate the mentioned provision of the Federal constitution.

5. The amplification of the title of an act so as to make it expressly mention matters germane to and properly connected with its general subject does not vitiate such title or subject it to the criticism of having dealt with two distinct or incongruous subjects. The provisions of section 23 of Chapter 4700, laws of 1899, do not deal with a subject not connected with or germane to the general subject of the act as expressed in its title, nor does said act embrace more than one subject and matter properly connected therewith.

Writ of error to the Circuit Court for Duval county.

Motion to dismiss writ of error.

The facts in the case are stated in the opinion of the court.

*John E. Hartridge and John A. Henderson*, for the Motion.

*Geo. P. Raney, E. J. L'Engle and Alex. W. Smith*, contra.

TAYLOR, C. J.:

The Railroad Commissioners of Florida, under the provisions of Chapter 4700 laws, approved June 3rd, 1899, made an order requiring the Jacksonville Terminal Company, a corporation, to admit the Atlantic, Valdosta and Western Railway Company, with its engines, cars and trains, to the use and benefit of its terminal facilities and union depot in the city of Jacksonville to

the like extent accorded by it to other railway com-
panies, upon the payment by said railway company to
it of the sum of $1,275 quarter-annually, for the use of
such terminal facilities, besides its equitable proportion
of the expenses of maintenance, operation, taxes and
repairs of said terminal property, and commanding the
said railway company to join its tracks to those of said
Terminal Company, and to operate its trains in and out
of said terminal station and union depot. Upon the
alleged refusal of said Terminal Company to comply
with such order of the Railroad Commissioners, the At-
torney-General and the special counsel for the Railroad
Commissioners, by special order of such commissioners,
sued out an alternative writ of mandamus from the Cir-
cuit Court of Duval county, directed to said Terminal
Company, commanding it, in effect, to obey the said
order of the Commissioners or show cause why it should
not do so. The respondent Terminal Company met the
alternative writ of mandamus with a motion to quash
same upon various grounds, which motion was granted
by the Circuit Judge, and the respondent dismissed with-
out day. From this judgment the relators have sued
out a writ of error from this court, the same being issued
on the 11th day of October, 1899, and made returnable
to the 6th day of November, 1899, on which return day
the record and writ of error were filed in this court.

The defendant in error now moves this court to
quash the writ of error upon the following grounds: 1st.
Because the writ of error was issued and made return-
able during a term of this court, and without warrant
of law, and shows on its face that it is made returnable
within a less period of time than thirty days.

2nd. Because there is no provision in Chapter 4700
for suing out a writ of error, nor authority under said
Chapter 4700, under which said writ of error is sued out,

to take a writ of error from any judgment, order or de-
cree, nor is there any method provided in said Chapter
4700 for either writs of error or appeal.

3rd. Because there is no method provided in Chap-
ter 4700, under which said writ of error is sued out, for
a return to be made either where the writ of error is sued
out, or where appeal is taken.

4th. Because there is no law authorizing writs of
error or appeals to be returned to a day in a term that
has already commenced at the entry of the appeal or the
issuance of the writ of error.

5th. Because this is not such an action or suit as is
contemplated by Chapter 4700, laws of Florida, neither
the Railroad Commissioners nor the State of Florida
being the real party in interest; but said litigation is
between two private corporations without obligation
from one to the other.

6th. Because the writ of error, as it has been issued,
served and returned, is not "due process of law."

7th. Because it denies the defendant in error "the
equal protection of the laws" guaranteed by the four-
teenth amendment to the constitution of the United
States.

8th. Because the provision of Chapter 4700, laws of
Florida, under which the writ was issued, is inoperative
and void, as it is a distinct subject not connected with,
related or germane to the subject expressed in the
title of the act.

9th. Because the act embraces more than one sub-
ject and matter properly connected therewith.

The first, second, third and fourth grounds of this
motion will be discussed together, as they all in-
volve a construction of that part of section twenty-three
of Chapter 4700 laws, approved June 3rd, 1899, which
is as follows: "Appeals by either party shall be from

judgments, orders and decrees of inferior courts in all suits and cases brought under the provisions of this act to the same extent that appeals lie in similar suits and cases brought under any other law in this State, and not otherwise; but all such appeals shall be taken to the appellate court, returnable within thirty days, and shall be advanced to the head of the docket and given precedence over all other appeals except *habeas corpus* proceedings, and shall be heard and determined as soon as practicable after the filing of the appeal in the said court, and appellate courts are hereby authorized and required to establish such reasonable special rules and regulations for the speedy trial and disposition of such appeals as may be necessary or advisable to secure the prompt hearing and disposition of such appeals." The contention hinges upon the determination of the true sense in which the word *"appeals"* was intended to be used by the law-makers in the enactment of the section quoted.

The contention of the defendant in error is that the word is to be given its narrowest meaning, and as used in the statute, signifies an appeal in the strictest technical sense, as in an equity suit, as contradistinguished from a writ of error at law. If this contention can properly be sustained, then the motion should prevail, as the statute itself does not in express terms mention writs of error. But it is clear to our minds that the contention of the defendant in error is unsound, and that the word "appeals" in the quoted section is therein used in its popular, broadest and most comprehensive sense, and signifies any and all appropriate appellate proceedings provided by law for reviewing judgments at law, orders and decrees in equity, and other reviewable orders, judgments or decrees, whether by writ of error, or by an appeal proper in its strictest technical sense. The popular and most comprehensive meaning of the word "ap-

peals" is: "the removal of a cause from a court of inferior to one of superior jurisdiction, for the purpose of obtaining a review and retrial." 1 Bouv. L. Dict. 149 and citations; Black's L. Dict. 78. Webster defines it to be "an application for the removal of a cause or suit from an inferior to a superior judge or court for re-examination or review. The mode of proceeding by which such removal is effected." In the case of Southern Bell Telephone and Telegraph Co. v. D'Alemberte, 39 Fla. 25, text 39, 21 South. Rep. 570, it is said that "while it is true, as a general rule, that popular words are to be construed in the popular sense, and technical words in a technical sense, when used in a statute, yet when a word has both a popular and a technical meaning, the court will give it effect according to the popular signification if it was so used by the legislature, and the context may be referred to in ascertaining the sense in which it was used." As before seen, since the adoption of the Revised Statutes, and at the time of the enactment of this statute, there was no such proceeding recognized by our laws as an *appeal*, in its strict technical sense, from a judgment at law, but such judgments could only be reviewed by writ of error, and yet the legislature, with this *status* of the law in view, provided by the quoted section that *"appeals* by either party shall be from *judgments,* orders and decrees of inferior courts in *all suits* and cases brought under the provisions of this act *to the same extent* that *appeals* lie in *similar suits and cases brought under any other law in this State, and not otherwise"* (italics ours). It is clear from the context that the purpose of the legislature was to give to litigants in *all cases* arising under or falling within the purview of the act, the right to have such causes reviewed by appellate courts to the same extent that similar cases, arising under other laws, could be reviewed, "and not oth-

24

erwise," and yet if the strict technical construction contended for the use of the word *"appeals"* be applied, this clearly expressed purpose of the statute would be annulled, and no *judgment at law* could be reviewed that arose under it, since there is no other law by which an *appeal*, in its technical sense, can be utilized for reviewing judgments at law, and the act itself provides no such proceeding except in name only. But again, that the legislature used the word "appeals" in its popular, broadest and generic sense, is rendered clear when it excepts *habeas corpus* proceedings from all the other *"appeals"* over which the act gives its cases the precedent right of hearing and determination in the appellate courts. *Habeas corpus* cases can not be reviewed by *appeal* in its strict technical sense, but by writ of error only, and yet this act excepts such cases from the *"appeals"* over which precedence of hearing is given by it. The evident purpose of the section was not to add to, modify or change any of the recognized and differentiated modes of procedure by which cases at law and in equity are respectively transferred for review from inferior to superior courts, except in the one particular of the *return day* of such appellate proceedings, whether by writ of error or by technical appeal, when applied to cases falling within the provisions of the act, but left all such modes of procedure to be respectively followed in cases arising under the act with their differentiating applicability—writs of error to be applied to cases at law, and technical appeals to causes in chancery. With this construction all of the provisions of the quoted section are harmonized and rendered affective; but, as before seen, with the narrow construction contended for, we would be led into contradictory and absurd results.

It is again contended that there is no authority of law for making a writ of error returnable to a day within

a term of the appellate court already begun.   As before
seen, the word "appeals," as used in this statute, in-
cludes writs of error as well as technical appeals, and by
the express provisions of the quoted section all such ap-
peals, including writs of error, are required to be made
returnable within thirty days from the date they are
taken or issued.

It is also contended that this section violates section
20 of Article III of our State constitution, that prohibits
the legislature from passing special or local laws regulat-
ing the practice in courts of justice.   This contention is
also untenable.   In *Ex Parte* Wells, 21 Fla. 280, this
court, after reviewing many authorities therein cited,
decided, in effect, that the constitutional limitation in-
voked did not prohibit the reasonable classification of
persons and things, and that such classification does not
depend, for its propriety, upon numbers, and that a law
that affected *all persons or things of a class* was a general
and not a special law.   The quoted section of the act,
under which this writ of error was issued and made re-
turnable, out of the usual time prescribed for the return
of similar writs in ordinary cases, groups together, *as a
class, all cases* brought under the provisions of the act of
which it forms a part, and makes the appeals (used in
its generic sense) *in all of them,* returnable within thirty
days, irrespective of the kind, or nature of the case.   The
distinguishing feature of the *class* of cases thus provided
for is that they must have been "brought under the pro-
visions of said act"—Chapter 4700.   The act does not
attempt to alter or modify any of the established forms
of procedure by which any of the various kinds of cases
that may arise under the act are carried through the
trial courts; nor does it attempt to alter or modify any
of the established forms of procedure for transferring
any of such cases to the appellate courts for review, but

when any of such cases, be they whatsoever form of action they may, are carried, by any of the established forms of procedure therefor respectively provided, to an appellate court for review, its purpose is to speed all such cases by requiring all such proceedings to be returnable before the appellate courts within thirty days from the date they are taken or issued. Dell v. Marvin, 41 Fla. ——, 26 South. Rep. 188; Jacksonville, Tampa & Key West Ry. Co. v. Adams, 33 Fla. 608, 15 South. Rep. 257; Summerlin v. Thompson & Co., 31 Fla. 369, 12 South. Rep. 667.

It is next contended for the movers that this suit is not such an action or suit as is contemplated by said Chapter 4700, laws of Florida, neither the Railroad Commissioners nor the State of Florida being the real party in interest, but said litigation is between two private corporations without obligation from the one to the other, and that, therefore, the case is not entitled to the speedy return and hearing before this court that is provided for in the quoted section of the act. As before seen, the only distinguishing feature of the *class* of cases, the appellate proceedings in which are to be returned within thirty days, and that are to be heard and determined in advance of other cases before the appellate courts, is that it shall be *"brought under the provisions"* of that particular act, and not that the State of Florida or the Railroad Commission is, or is not, a real party in interest. Section 6 of the act expressly purports to give to the Railroad Commissioners the power to regulate, supervise and control all passenger, terminal or union depot companies, and to require the admission into such union depot or terminal, by the owner, lessee or operator thereof, of any railroad company or companies that may desire to enter such terminal or union depot, or that may be required to do so by order of said Commission-

ers, and to prescribe and enforce just and reasonable
rates for the privilege.    And section 21 of the act au-
thorizes the commissioners, at their discretion, to cause
to be instituted by the Attorney-General, State Attorney
or special counsel, in the name of the State, proceedings
by mandamus, injunction, &c., against any company or
common carrier subject to the provisions of the act, to
compel the observance of the provisions of the act.    Un-
der these provisions of the law the Railroad Commis-
sioners have made the order sought to be enforced by
the mandamus involved herein, and that proceeding has,
by their special order, likewise been instituted under
such provisions.    The case, then, is essentially one
"brought under the provisions of the act," and falls
within the class of cases the proceedings for the review
of judgments in which are required by the act to be
made returnable before the appellate court within thirty
days.

It is next contended that the writ of error as it has
been issued, served and returned, is not "due process of
law."    The writ was issued on the 11th day of October,
1899, returnable to the 6th day of November following,
allowing twenty-six days between its issuance and re-
turn.    It is not claimed that defendant in error has not
had ample time in which to fully present its case in this
court.    In fact, after the case was set down for hearing
the defendant in error applied for and obtained a post-
ponement of the hearing for seven days, making in all
twenty-two days after the return day of the writ when
this motion to dismiss was made.    The writ of error was
duly recorded as provided by Chapter 4529, laws of 1897,
and under the decision in the case of State ex rel. An-
dreu v. Canfield, 40 Fla. ——, 23 South. Rep. 591, this
was sufficient notice to the defendant of the suing out of
the writ; and besides, the motion made by the defend-

ant in error to dismiss is general, and amounts to a general appearance in this court under our previous rulings. In our opinion there is no just ground for any contention that the defendant is being deprived of its property without due process of law.

It is next contended that the hastening of the return day of all appellate proceedings under said Chapter 4700, and the advancement given thereby to the hearing and determination of such cases in the appellate courts, denies to the defendant in error "the equal protection of the laws" guaranteed by the fourteenth amendment to the Federal Constitution. It is difficult for us to discover how any party to a cause that has been advanced for hearing and determination on the dockets of a court, when he has had reasonably ample time for preparation and presentation of such case, can complain of such *advancement* as a denial of the equal protection of the law. Such a complaint would come with more semblance of force from some outside litigant before the court, the hearing and determination of whose case has been postponed by the preferred class of cases. But does the law in question deny to anyone the guaranteed equal protection of the laws? That it does not abundantly sustained by the numerous cases in which this much invoked clause of the Federal Constitution has been passed upon by the Supreme Court of the United States. In Magoun v. Illinois Trust and Savings Bank, 170 U. S. 283, 18 Sup. Ct. Rep: 594, in which numerous precedent cases from the same court are cited and discussed, it is held that this clause of the Federal Constitution does not preclude legislation reasonably classifying persons and things, and that generally it "only requires the same means and methods to be applied impartially to all the constituents of a class so that the law shall operate equally and uniformly upon all persons in

similar circumstances." And the test of the *reasonableness* of a classification is that "it must be based upon some difference which bears a just and proper relation to the attempted classification, and is not a mere arbitrary selection." Dell v. Marvin, 41 Fla. ——, 26 South. Rep. 188. Chapter 4700, assailed, is a general law providing for a State Railroad Commission, defining the duties and powers of such commission over railroads and other transportation companies doing business in this State, and providing remedies for the enforcement of such powers. Sec. 23 of the act, for the purpose of expediting the disposition of cases "brought under the provisions of the act," puts *all* of such cases in a class and requires that when they are carried for review from an inferior to a superior court, the appellate proceedings must be returned before the appellate courts within thirty days, and that *all* cases thus classified shall have preference over other causes before the appellate courts in the hearing and determination thereof. The application of the law to the class that it creates is equal and uniform, and applies in the same way and to the same extent to *all the constituents of the class.* Is the classification a reasonable one? We think so. It is a legitimate declaration of the legislative purpose that the final disposition in the courts of all cases growing out of the general regulation of railroads and other transportation companies by its State Railroad Commission, shall be expedited, and this for the purpose of making such commission more effective to accomplish the purposes of its creation.

It is, lastly, contended that the provision of said act relating to the taking of appellate proceedings in the form of writs of error is a distinct subject not connected with, related or germane to the subject expressed in the title of the act; and that the act embraces more than one subject and matter properly connected therewith. As to

the first of these contentions it is a sufficient answer to say that the title of the act expressly states that it is an act "to provide remedies for the enforcement of the provisions of this act," and, as before seen, the word "*appeals*" in the twenty-third section of the act is therein used in its most popular generic sense, and includes writs of error as one of the remedies for reviewing judgments rendered under the provisions of the act by inferior courts. The general subject of the whole act, as before seen, is the creation of a State Railroad Commission for the general supervision, regulation and control of railroads and other transportation companies engaged within this State in the carriage of persons and property. By the act the duties and powers of such commission is carefully defined; most assuredly the providing of judicial remedies for the enforcement of such duties and powers is matter germane to and properly connected with the general subject of such act, otherwise the other provisions thereof would be futile legislation; and the amplification of the title of an act so as to make it expressly mention matters germane to and properly connected with its general subject does not vitiate such title or subject it to the criticism of having dealt with two distinct or incongruous subjects.

The motion to dismiss the writ of error is denied.