## CONDON *v.* MALONEY,

### AND

## STATE *ex rel v.* CONDON.

### (*Knoxville.* November 9, 1901.)

1. MANDATORY INJUNCTION. *Rarely used by the courts.*

   The extraordinary process of mandatory injunction is rarely used by the courts. (*Post, p. 86.*)

2. CONSTITUTIONAL LAW. *General rules.*

   All intendments are in favor of the constitutionality of an Act of the Legislature passed with the forms and ceremonies requisite to give it the force of law. Every reasonable doubt must be solved in favor of the legislative action. He who seeks to have a legislative Act declared void on the ground that it is violative of the Constitution, must be prepared to place his finger on the clause which vitiates it. (*Post, p. 87.*)

   Case cited: Cole Mfg. Co. *v.* Falls, 90 Tenn., 468.

3. SAME. *Same.*

   The phrases "by the law of the land" and "due process of law," as used in constitutional provisions, are exact equivalents. (*Post, p. 88.*)

   Case cited: Harbison *v.* Knoxville Iron Co., 103 Tenn., 421.

4. KNOX COUNTY ROAD LAW. *Not vicious class legislation.*

   The "Knox County road law"—Acts 1901, Ch. 8—which applies only to "counties having a population of not less than 70,000, and not more than 90,000, under the Federal census of the year 1900, or any subsequent Federal census," is not vicious class legislation, although only a single county, to wit: Knox County, was embraced within its classification under the Federal census of 1900, and two counties, to wit: Davidson and Shelby, were excluded from its operation, as having more than 90,000 inhabitants, and the remaining counties of the State were excluded from its operation, as having less than 70,000 inhabitants under that census. (*Post, pp. 87-98.*)

   Constitution construed: Art. I, § 8; Art. XI, Sec. 8.

   U. S. Const., XIV Amendment.

   Act construed: Acts 1901, Ch. 8.

Condon *v.* Maloney and State *ex rel v.* Condon.

Cases cited: Stratton v. Morris, 88 Tenn., 534; Harbison *v.* Knoxville Iron Co., 103 Tenn., 421; Luehrman *v.* Taxing District, 2 Lea, 435; Cook *v.* State, 90 Tenn., 407; State *ex rel. v.* Schlitz Brewing Co., 104 Tenn., 715 ; Peterson v. State, 104 Tenn., 127.

5. SAME. *Not obnoxious as embracing two distinct subjects.*

The "Knox County road law"—Acts 1901, Ch. 8—is not obnoxious to constitutional objection, as embracing two distinct subjects, although it deals with public roads and the county · workhouse in a single statute. (*Post, pp. 98-100.*)

Constitution construed: Art. II, Sec. 17.

Cases cited: Cannon *v.* Mathes, 8 Heis., 504; Cole Mfg. Co. *v.* Falls, 90 Tenn., 466; Ryan *v.* Terminal Co., 102 Tenn., 123; State *v.* Brown, 103 Tenn., 450.

6. SAME. *Not vicious as depriving the people of home rule.*

The "Knox County road law"—Acts 1901, Ch. 8—does not, by authorizing the Governor to appoint the Road Commission therein created to hold until the next general election, violate that clause of the Constitution which forbids the filling of any office created by the Legislature otherwise than by election by the people or by the County Court. (*Post, pp. 100-102.*)

Constitution construed: Art. XI, Sec. 17.

7. OFFICE. *Vacancy in.*

The filling of newly created office for the first time is the filling of a vacancy within the meaning of the constitutional provision that "the election of all officers and the filling of all vacancies, not otherwise directed or provided by this Constitution, shall be made in such manner as the Legislature shall direct." (*Post, p. 101.*)

Constitution construed: Art. 7, Sec. 4.

Cases cited: State *ex rel. v.* Maloney, 92 Tenn., 62; State *v.* Glenn, 7 Heis., 472.

FROM KNOX.

Appeal from the Chancery Court of Knox County. Jos. W. SNEED, J.

Condon *v.* Maloney and State *ex rel v.* Condon.

S. G. HEISKELL, J. M. KING, C. T. CATES, JR., and CALDWELL & CALDWELL for Condon.

GREEN & SHIELDS and PICKLE & TURNER for Maloney.

AND

STATE EX REL *v.* CONDON.

(*Knoxville.* November 9, 1901.)

Appeal from the Chancery Court of Knox County. JOS. W. SNEED, J.

GREEN & SHIELDS and PICKLE & TURNER for relators.

J. W. CALDWELL and C. T. CATES, JR., for Condon.

BEARD, J. These are consolidated causes. The first is a proceeding by mandatory injunction, to compel the defendant, Maloney, as County Judge, to examine and approve the bonds of complainants as road commissioners of Knox County, they asserting claim to that office, by virtue of an appointment by the Governor, pursuant to the provisions of an Act of the last session of the Legislature. (Acts 1901, Ch. 8, p. 10.) In their bill, it is alleged, that they had tendered to the defendant, the bonds executed in all respects as required of them by Section 15 of the Act, for his approval as County Judge, and that he had

Condon *v.* Maloney and State *ex rel v.* Condon.

declined to examine or approve them, upon the sole ground assumed by him, that the Act was void for unconstitutionality, and the prayer of the bill is that a mandatory injunction be awarded to require him to discharge the duty of examination and approval as one merely ministerial. In accordance with the prayer, a writ of mandatory injunction was awarded. Subsequently a demurrer, calling in question the right of the complainants to this injunction, and challenging the constitutionality of the Act, was filed, and upon argument overruled. The defendant, declining to make further defense, a final decree was entered, affirming the right of the complainants to the relief sought. From this decree an appeal was prayed and granted.

The second of these causes is a statutory proceeding in the nature of a *quo warranto,* brought after defendants (who are the complainants in the first named cause) had been inducted into office, as the result of the mandatory injunction referred to, on the relation of the removed officials, assailing the title of defendants to the offices of Public Road Commissioners, and seeking reinstatement of the relators. The attack of the relators on the title of the defendants is based on the assumed unconstitutionality of Ch. 8 of the Acts of 1901. Upon demurrer the bill was dismissed, and the relators appealed.

The causes were heard by the Court of Chan-

cery Appeals, and the decree of the Chancellor in each was affirmed. From the decree of affirmance the defendant, Maloney, in the one, and the relators, in the other of these cases, have prosecuted appeals to this Court.

The questions involved in the two causes are the same, save in the first it is insisted for the defendant, Maloney, that the action of the Chancellor in awarding the mandatory injunction was arbitrary and unauthorized, and this Court is earnestly asked to so pronounce.

Rare as is the use of this extraordinary process, yet the power of the Chancellor to grant it, in a proper case, is recognized in equity practice, and we are not prepared to say that there was here an abuse of discretion.

But if it was conceded the writ should not have been awarded, yet it appears from these records that it was obeyed by the County Judge in the examination and approval of the bonds submitted to him, and the complainants were inducted into office. This being done, the writ spent its force, and a reversal of his decree in that regard could not undo what has been done. This being so, it would be an idle ceremony, even if disapproving the Chancellor's action, to enter such a decree.

This brings us to the more serious questions raised by these appeals.

The Act, the constitutionality of which is chal-

Condon *v.* Maloney and State *ex rel v.* Condon.

lenged by the respective appellants, is entitled "An Act to create a Board of Public Road Commissioners, to regulate the laying out and working of public roads in this State in counties having a population of not less than 70,000 and not more than 90,000, under the Federal Census of the year 1900, or any subsequent Federal Census, and to provide a method for the management and control of county work-houses in counties coming under the provisions of this Act."

It is a well-established canon of constitutional construction, and certainly is now axiomatic in this State, that he who seeks to have a legislative act declared void on the ground that it is violative of the constitution, must be prepared to place his finger on the clause which vitiates it. For, as was said by Caldwell, J., in *Cole, Mfg. Co.* v. *Falls,* 90 Tenn., 468, "all intendments are in favor of the constitutionality of an Act of the Legislature, passed with the forms and ceremonies requisite to give it the force of law. . . . Every reasonable doubt must be solved in favor of the legislative action."

Bearing this rule in mind, we come now to the consideration of the Act in question.

In the first place, it is said that this is vicious class legislation, passed in violation of Article XI., Section 8, and Article I., Section 8, of the State Constitution, and the Fourteenth Amendment to the Federal Constitution. These

several sections are so familiar it is not worth while to set them out here.

In *Harbison* v. *Knoxville Iron Co.,* 103 Tenn., 421-431, it is said that the phrase, "by the law of the land," as used in Section 8, Article I. of the State Constitution, is the exact equivalent of the terms, "due process of law," as used in the Federal Constitution, and it is asserted in the argument of the counsel for the appellants, "that whatever is forbidden as vicious class legislation by the State Constitution, is likewise forbidden by the Fourteenth Amendment to the Constitution of the United States."

We will then first refer to one or more of the leading cases, decided by the Supreme Court of the United States, involving the question of legislative classification, and ascertain the rule adopted by that Court.

In *Magoun* v. *Ill. Trust & Savings Bank,* 170 U. S., 283, was raised the question of the constitutionality of the inheritance tax law of the State of Illinois. That Act classified successions, and fixed the rate of taxation upon them, in substance as follows: 1. When the beneficial interest to any property or income therefrom should pass to or for the use of a father, mother, husband, wife, child, brother, sister, wife, or widow of the son, etc., in every such case the rate of tax should be one dollar on each one hundred dollars of the market value of the property received by

Condon *v.* Maloney and State *ex rel v.* Condon.

such person; provided, however, that any estate of less value than twenty thousand dollars received by such person, should not be the subject of this tax. 2. When the beneficial interest to any property passed to or for the use of any uncle, aunt, etc., in any such case, the rate of such tax should be two dollars on every one hundred dollars of the market value of such property received by each person in excess of two thousand dollars so received; and (3) in all other cases the rate should be on each one hundred dollars of property received as follows: On all estates of ten thousand dollars or less, three dollars; on all estates of over ten thousand and not exceeding twenty thousand dollars, four dollars; on all estates over twenty thousand dollars and not exceeding fifty thousand dollars, five dollars; and on all estates over fifty thousand dollars, six dollars, etc.

This Act was attacked as vicious class legislation, it being insisted that it was necessarily arbitrary, and its provisions as causing discriminations and creating inequality of burdens of taxation, in violation of the Fourteenth Amendment, which prohibits a State denying to any citizen the equal protection of the laws.

To this contention the Court, speaking through McKenna, Justice, said: "What satisfies this equality has not been, and probably never can be, defined. Generally it has been said that it "only

requires the same means to be applied impartially to all the constituents of a class, so that the law shall operate equally and uniformly upon all persons in similar circumstances." Kentucky Railroad Tax cases, 115 U. S., 321, 337. It does not prohibit legislation which is limited, either in the objects to which it is directed, or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike under like circumstances and conditions, both in the privileges conferred and the liabilities imposed. . . . It may be safely said that the rule prescribes no rigid equality, and permits to the discretion and wisdom of the State a wide latitude as far as interference by this Court is concerned. . . . In other words, the State may distinguish, select and classify objects of legislation, and necessarily this power must have a wide range of discretion."

And so it was, the Court held that the Act did not impinge upon the Fourteenth Amendment, though it relieved absolutely persons who belonged to the first class, and yet came into property of a less value than twenty thousand dollars—while it placed the burden upon all others of that class succeeding to property of greater value than twenty thousand dollars, and not only placed a still heavier burden upon those belonging to the second and third classes, but graduated this burden among those belonging to these classes according

to the value of their respective successions. Yet, we think, it might possibly be difficult to assign any satisfactory reason why a person of the first class, receiving an estate of twenty thousand dollars, should pay this inheritance tax, while another person of the same class, receiving a dollar less, should be relieved from it, and so with regard to the discrimination made in the other cases.

Nor did the Court attempt to assign any reason for the difference. On the contrary, it said, "There is . . . no precise application of the rule of reasonableness of classification, and the rule of equity permits many practical inequalities. . . . It only requires that the law . . . shall operate on all alike under the same circumstances." Thus, in substance, using the language employed in so many of our cases which deal with the two clauses of the State Constitution in question here.

In *Orient Insurance Co.* v. *Daggs,* 172 U. S., 557, was involved a statute of Missouri, providing that in suits upon policies of insurance against loss by fire, the defendant shall not be permitted to deny that the property insured was worth, at the issuance of the policy, the full amounts covered by the policy; and in case of total loss, that the measure of damages should be the amount at which the property was insured, less depreciation in value between the time of issuing the policy and at the time of the loss, and the

burden of proving such depreciation should be on the defendant, etc.

It was objected that this statute was passed iu violation of the Fourteenth Amendment of the Federal Constitution, in that it discriminated "as to the subject matter, as to the parties, as to the mode of trial of actions at law and equity, and imposes upon this particular class of under-writers, as distinguished from all the rest of the world, conditions which abrogate its contracts, com-pel ·it to pay damages never sustained, and pre-vent it from having an investigation upon the trial by due process of law."

The Court, in disposing of this contention, re-fers to the case of *Magoun* v. *Illinois Trust & Savings Bank, supra,* as containing a late review of the subject, and adds: "We said in that case that the State may distinguish, select and classify objects of legislation, and necessarily the power must have a wide range of discretion. And this because of the function of legislation and the purposes to which it is addressed. Classification for such purposes is not invalid because not de-pending on scientific or marked differences in things or persons, or in their relations. It suf-fices if it is practical, and is not reviewable *unless palpably arbitrary."* The Court then con-cludes: "The classification of the Missouri statute is certainly not arbitrary."

Without citing other cases from that Court, it

will be sufficient to say, that an examination of the United States Supreme Court Reports will show that the Court not only has failed to declare all legislative classifications to be obnoxious to the amendment in question, but, on the other hand, has recognized many State laws classifying property or persons, in their respective relations, as outside the inhibition of the amendment. The theory upon which this holding rests is thus stated by Fields, Justice: "The greater part of all legislation is special, either in the objects sought to be attained by it, or in the extent of its application; laws for the improvement of municipalities, the opening and widening of particular streets, the introduction of water and gas. . . . laws for the irrigation and drainage of particular land, . . . are instances of this kind. Such legislation does not infringe upon the clause of the Fourteenth Amendment, requiring equal protection of the laws, because it is special in its character. . . . And when legislation applies to particular bodies or associations, imposing upon them additional liabilities, it is not open to the objection that it denies to them the equal protection of the laws, if all persons brought under its influence are treated alike under the same conditions. A law giving to mechanics a lien on buildings constructed by them, or repaired by them, for the amount of their work, and a law requiring railroad corporations

to erect and maintain fences along their roads, . . . . are instances of this kind. · Such legislation is not obnoxious to the last clause of the Fourteenth Amendment, if all persons subject to it are treated alike, under similar circumstances and conditions, in respect both of the privileges conferred and liabilities imposed."

So we are satisfied that this Act does not in any regard infringe the Fourteenth Amendment to the Federal Constitution, as it operates upon all counties in like conditions, with uniformity, and cannot be said to be palpably arbitrary. The same rule of . construction that saves it in this regard will protect it from the condemnation of Section 8 of Article I. of the Constitution of the State. For a classification is safe as against this provision, when, as this does, it embraces equally all counties which are now or hereafter may be in like condition. *Stratton* v. *Morris,* 89 Tenn., 534; *Harbison* v. *Knoxville Iron Co.,* 103 Tenn., 421.

Is the Act violative of Article XI., Section 8 of the State Constitution, in that it grants to "one individual, or individuals, rights, privileges, immunities or exemptions, other than such as may be by the same law extended to any member of the community who may be able to bring himself within the provisions of the law."

It applies alike to all "counties having a population of not less than 70,000 and not more

than 90,000, under the Federal Census of the year 1900, and subsequent Federal Censuses." By its terms it applies with uniformity to all counties which had the requisite population at the time of the passage of the Act, and to all such as hereafter may fall within its provisions, as indicated by it.

The question of the constitutionality of legislation, providing for a classification of towns, cities and counties, with the view to the operation of particular statutes, has long since been put at rest by the decisions of this State. Perhaps no statutes have been more stubbornly contested than those at stake in *Luehrman* v. *Taxing District,* 2 Lea, 435, and *Cook* v. *State,* 90 Tenn., 407, yet both provided for classifications, resting for population upon the Federal Census, and both were upheld.

The first of these cases called in question a series of Acts, constituting, however, a system, beginning with the Act repealing the charter of certain municipal corporations (1879, Ch. 10), and ending with the Act to establish Taxing Districts (1879, Ch. 11), and the Act amendatory thereof (1879, Ch. 84); and the second the "District Law," Ch. 24, Ex. Sess., 1890.

But it is said the Acts in controversy in these cases, are to be distinguished from the one at bar in the present case.

We do not think so. We are unable to dis-

cover how the case of *Cook* v. *State, supra,* can be maintained, and the Act now in question be annulled as capricious and arbitrary. In essentials they are the same, and the one cannot stand while the other falls.

But it is urged that no reason has been assigned for limiting the operation of the Act to counties "having a population of not less than 70,000 and more than 90,000," and thus necessarily excluding the counties of Davidson and Shelby, each having a population, according to the Federal Census, largely in excess of 90,000. To this objection, it may be said as to Davidson that the Legislature may have found as a reason for its exclusion, that it was covered by turnpikes built and controlled by private chartered companies, and in the matter of Shelby, that the public has already perfected a network of good roads, under a system entirely satisfactory.

But while the Courts frequently find and assign reason for legislative classification, yet it is by no means uniformly so. And it does not follow, because the reason for the classification is not disclosed in the face of the Act, that it is necessarily without reason and capricious. Reasons eminently wise and provident might control the law-making body, which do not appear upon the face of a statute, and for the Courts to strike it down, because not readily perceptible, might well be criticised as an act of judicial usurpation.

Nor is there any abdication of constitutional duty or responsibility in this action.

The true question in each case is, is the classification capricious, unreasonable or arbitrary?

As is said in the opinion of the Court by Caldwell, J., in *State, ex rel.* v. *Schlitz Brewing Co.,* 104 Tenn., 715, 731: "Class legislation is of two kinds, namely, that in which the classification is natural and reasonable, and that in which the classification is arbitrary and capricious." The Court then refers to the case of *Magoun* v. *Ill. Trust & Savings Bank, supra,* and *Orient Ins. Co.* v. *Daggs, supra,* with approval, and, with regard to classification, embodied from the latter case a sentence already quoted, that "it suffices if it is practical and is not *reviewable unless palpably arbitrary."*

This is the latest utterance of this Court upon this vexed question, made after a careful collation and consideration of the cases, and we are satisfied of its soundness. Applying this criterion to the statute, we are satisfied that it is not "vicious classification."

But it is said this statute is void because, while general in its terms, yet as a matter of fact only the County of Knox falls within its provisions when passed.

The same objection would and in fact was made in the case of *Luerhman* v. *Taxing District, supra,* that only the city of Memphis fell

24 P—7

within the provisions of the Acts there in question, and in the case of *Cook* v. *State, supra,* that only two counties in the State could avail themselves of the Dortch law, and in *Peterson* v. *State,* 104 Tenn., 127, that the no-fence-law (Ch. 23, Acts 1899) applied only in counties in the State having a population of 59,000 or more by the Federal Census of 1890, etc., but in each case the objection was overruled. These cases were decided after careful deliberation, and we see no occasion to question their absolute correctness.

Again, it is insisted that the statute is void, because in violation of Article II., Section 17 of the State Constitution, in that it includes two distinct subjects, to wit: public roads and workhouses.

In *Cannon* v. *Mathes,* 8 Heisk., 504, the Court quoted with approval from Judge Cooley on Constitutional Limitations, as follows: "The general purpose of these provisions is accomplished when the law has but one general object, which is fairly indicated in the title. To require every end and means necessary or convenient for the accomplishment of this general object to be provided by a separate act relating to that alone, would not only be unreasonable, but would actually make legislation impossible. . . . The generality of the title is no objection to it so long as it is not made a cover to legislation

incongruous in itself, and which, by no fair intendment, can be considered as having a necessary or proper connection."

Many illustrations of the application of this rule of construction may be found scattered through our Reports. Among these are the cases of *Cole Manufacturing Co.* v. *Falls,* 90 Tenn., 466; *Ryan* v. *Terminal Co.,* 102 Tenn., 123; *State* v. *Brown,* 103 Tenn., 450. It will be unnecessary to examine these cases in detail. It is sufficient to say, that they recognize the rule as stated by Judge Cooley, and supported in *Cannon* v. *Mathes, supra,* or else the same rule stated in different language in Sutherland on Statutory Construction, Section 93, as follows: "Where the title of a legislative act expressed a general subject or purpose . . . all matters which are naturally and reasonably connected with it, and all measures which will or may facilitate the accomplishment of the purpose so stated, and properly included in the Act, and are germane to its title."

On this point we adopt the language of the brief of the counsel for appellees: "Not only is it true, historically, that working convicts on roads is a part of the public policy of the State, but it is also true that it has the sanction of positive law. See Shannon's Code, § 1642, Acts 1891.

"Here it is expressly declared that all persons confined in county jails or work-houses shall be

available to the Commissioners for the purpose of working on public highways.

"Thus the two subjects of public roads and of work-houses have been connected in the history and in the legislation of Tennessee, until it is fair to say that the connection has become organic, and it is entirely within the power of the Legislature, in seeking to secure good roads, to place these two matters, thus connected, under one control; it is proper that the Commissioners, who must work the convicts on the roads, should have the control of the convicts. A divided jurisdiction is always unsatisfactory and injurious." We, therefore, think this objection is unsound.

Finally, it is said the Act is violative of Section 17, Article XI. of the Constitution, which forbids the filling of a county office created by the Legislature, otherwise than by election of the people or by the County Court, inasmuch as it authorizes the Governor to appoint the Commissioners constituting the first Board, who shall hold their offices until the next general election.

The appointment provided for in the Act is temporary in character. Its object is to place the new system in operation without delay. A question very similar in principle was considered by the Supreme Court of Michigan in *People* v. *Hurlburt,* 24 Mich., 44. The opinion in that case was delivered by Judge Cooley, who, while expressing a doubt whether the Legislature could

constitutionally appoint for a municipal corporation, when the Constitution contained express . provision for their local appointment, officers whose duties were exclusively local; yet held that it was entirely competent for that body to make provisional appointment of such commissioners to put the new system in motion.

But, independent of the authority of that case, we have no doubt that the Legislature had the power to vest in the Governor this right of temporary appointment. Section 4 of Article VII. of the Constitution, provides that "the election of all officers, and the filling of all vacancies not otherwise directed or provided by this Constitution, shall be made in such manner as the Legislature shall direct."

The term "vacancies," as used in the Constitution, has in a recent case been defined by this Court. In *State ex rel* v. *Maloney,* 92 Tenn., 62, it is said the word "vacancy" covers equally a case "where the appointment or election may be made to fill an office for the first time, and where it may be made to fill one whose previous incumbent has died, resigned, or been removed."

In *State ex rel.* v. *Glenn,* 7 Heisk., 472, it was insisted that the office of County Judge was a county office, and that one appointed by the Governor to fill a vacancy occasioned by the death of a late incumbent, was not entitled to serve by reason of the provision of Section 17 of

Article XI. To this the Court replied: "Assume, for argument, that 'this section' may include a county judge, does it prohibit a temporary appointment by the Governor until the next election? It says the office shall not be filled otherwise than by the people or the County Court. Other portions of the Constitution provide that the Judge of the Circuit and other Courts shall be elected by the people.

"This is certainly equivalent to saying that the office shall not be filled otherwise than by the people, and the Constitution has no provision for the filling of a vacancy in the office of a Judge by an appointment of the Governor, but it does contain a provision that the election of all officers and the filling of vacancies not otherwise directed or provided for by this Constitution, shall be made in such manner as the Legislature may direct, and under this power the Legislature directs the appointment to be made by the Governor. . . . The provision that the office (of Judge) shall only be filled by the voters, has not been supposed to take away the power of the Governor to fill a temporary vacancy." And we are satisfied that the contention, that the same provision, operates to prevent the Legislature from conferring upon the Governor the power to fill a temporary vacancy existing in the office of the road commissioner, in the institution of this new system, is unsound.

Condon *v*. Maloney and State *ex rel v*. Condon.

It is not improper to say, before closing this opinion, that the *State* v. *Glenn, supra,* is cited with approval in the Judge's Cases, 102 Tenn., 547, but by a typographical error, McAlister, J., is made to say that the provision of the Constitution in question, "relates only to the mode of filling a temporary vacancy."

The decree of the Court of Chancery Appeals. in each of the causes, is affirmed.