## M. H. SCOTT v. JOE MARLEY *et al.*

### (*Jackson.* April Term, 1911.)

1. **CONSTITUTIONAL LAW.** Statute authorizing judge, in his discretion, to make attorney fees a common charge in partition cases is not unconstitutional as delegating legislative functions.

The statute (Acts 1887, ch. 183, compiled in section 5035 of Shannon's Code), providing that in partition cases the court may, in its discretion, order the fees of the attorneys for both parties to be paid out of the common fund, where the property is sold for partition, and to be taxed as costs where the property is partitioned in kind, is not unconstitutional as delegating legislative functions to the judiciary by authorizing the judge to award, arbitrarily and at his pleasure, attorneys' fees out of the fund; for the discretion conferred upon the judge is a judicial discretion, a legal and regular power of discretion, the abuse of which may be reviewed. The court simply exercises a sound judicial and, in case of abuse, a reviewable discretion, in applying the law to the ascertained facts. (*Post, pp.* 393-395.)

Code cited and construed: Sec. 5035 (S.).

Acts cited and construed: Acts 1887, ch. 183.

Constitution cited and construed: Art. 2, sec. 2.

2. **WORDS AND PHRASES.** Judicial discretion is defined.

Judicial discretion, in its broadest meaning, is that sense of right and justice from which has arisen a variety of legal and equitable principles or rules never written into any constitution, code, or legislative act, but which nevertheless, by the sanction and approval of the courts, have become component parts of the law of the land; and in its narrower sense, it is the capacity of the presiding judge to understand and apply the law of the land to the particular facts of each case in judgment, so that the rights of the parties may be declared and enforced according to the law of the land. (*Post, pp.* 394, 395.)

Scott v. Marley.

3. **CONSTITUTIONAL LAW. Legislature cannot delegate power to make laws, but its delegation of judicial discretion already possessed by the courts to apply the law to the facts does not vitiate the law.**

While the legislature cannot constitutionally delegate its power to make a law, it can make a law delegating to the courts the power and discretion to determine some fact or state of things to which the law applies or upon which the law operates; for the courts, under the constitution, possess the power to exercise judicial discretion in the application of the laws, and the fact that a particular statute assumes to delegate a judicial discretion already possessed by the courts does not vitiate the statute, nor make it unconstitutional. (*Post, pp.* 395-397.)

Acts cited and construed: Acts 1887, ch. 183.

Cases cited and approved: Samuelson v. State, 116 Tenn., 486; Mores v. Reading, 21 Pa., 202; Locke's Appeal, 72 Pa., 491.

4. **SAME. Statute whose title gives ample notice of the legislation contained in its body is not unconstitutional because its body does not cover the whole extent of the title.**

A statute (Acts 1887, ch. 183, compiled in section 5035 of Shannon's Code), entitled "An act to regulate the practice in partition cases, and to provide for the expense of the same," and whose body provides that in partition cases the court may, in its discretion, order the fees of the attorneys of both parties to be paid out of the common fund where the property is sold for partition, and to be taxed as costs in cases where the property is partitioned in kind, is not unconstitutional upon the ground that its title insufficiently expresses the subject of legislation contained in its body, because its title certainly gives ample notice of the legislation contained in its body; and the body of the act is not required to cover the whole domain within the title. (*Post, pp.* 397, 398.)

Acts cited and construed: Acts 1887, ch. 183.

Constitution cited and construed: Art. 2, sec. 17.

Scott v. Marley.

Cases cited and approved: Cannon v. Mathes, 8 Heisk., 519; Frazier v. Railroad, 88 Tenn., 140; State v. Yardley, 95 Tenn., 546; State v. Brewing Co., 104 Tenn., 728.

5. **SAME. Statute whose title and body cover the practice and expense in partition cases is not unconstitutional as embracing more than one subject.**

The statute (Acts 1887, ch. 183), whose title is quoted and whose body is substantially stated in the next preceding headnote, is not unconstitutional as embracing more than one subject in violation of the constitutional requirement (art. 2, sec. 17) that no bill shall become a law which embraces more than one subject, that subject to be expressed in the title, because there is only one subject covered by the act, namely, the practice in partition cases. (*Post, p.* 398.)

Act cited and construed: Acts 1887, ch. 183.

Constitution cited and construed: Art 2, sec. 17.

Cases cited and approved: Cannon v. Mathes, 8 Heisk., 504; Luehrman v. Taxing District, 2 Lea, 426; Morrell v. Fickle, 3 Lea, 79; Frazier v. Railroad, 88 Tenn., 156; Manufacturing Co. v. Falls, 90 Tenn., 469; State v. Yardley, 95 Tenn., 554; Peterson v. State, 104 Tenn., 131; Condon v. Maloney, 108 Tenn., 99; Furnace Co. v. Railroad, 113 Tenn., 727.

6. **SAME. Statute authorizing payment of fees of attorneys out of common fund in partition cases is not unconstitutional as taking property without the judgment of peers, or not by the law of land.**

Said statute, in authorizing the payment of the fees of the attorneys out of the common fund, or to be taxed as costs, in partition cases, is not unconstitutional as the taking of property of an unwilling or unconsenting party other than by the judgment of his peers, or other than by the law of the land. (*Post, pp.* 398, 399-404.)

Acts cited and construed: Acts 1887, ch. 18{

Constitution cited and construed: Art. 1. sec. 8.

Scott v. Marley.

7. SAME. Statute authorizing payment of fees of attorneys out of common fund in partition cases is not unconstitutional as arbitrary or capricious class legislation.

The said statute, in authorizing the payment of the fees of the attorneys out of the common fund, or to be taxed as costs, in partition cases, is not unconstitutional as class legislation, because the classification is reasonable and natural, and not arbitrary or capricious; for partition suits naturally and reasonably belong to a class by themselves. (*Post,* pp. 399-404.)

Code cited and construed: Sec. 5035 (S.).

Acts cited and construed: Acts 1887, ch. 183.

Constitution cited and construed: Art. 11, sec. 8.

Cases cited and approved: Davis v. State, 3 Lea, 379; Demoville v. Davidson Co., 87 Tenn., 215; Bierce v. James, 87 Tenn., 538; Cook v. State, 90 Tenn., 407; Railroad v. Crider, 91 Tenn., 490; Turnpike Cases, 92 Tenn., 369; Dugger v. Insurance Co., 95 Tenn., 245; Henley v. State, 98 Tenn., 667; Debardelaben v. State, 99 Tenn., 649; Railroad v. Harris, 99 Tenn., 684; Harbison v. Knoxville Iron Co., 103 Tenn., 421; Dayton Co. v. Barton, 103 Tenn., 604 (affirmed by supreme court of the United States in 183 U. S., 23); Leeper v. State, 103 Tenn., 500; State v. Brewing Co., 104 Tenn., 715; Condon v. Maloney, 108 Tenn., 82; Neas v. Borches, 109 Tenn., 398.

8. SAME. Statute authorizing payment of fees of attorneys out of common fund in partition cases is not unconstitutional as taking the property of an unconsenting owner, *without just* compensation.

The said statute, in authorizing the payment of the fees of the attorneys out of the common fund, or to be taxed as costs, in partition cases, is not unconstitutional as violating the constitution prohibition against the taking of property of an unconsenting owner, without just compensation. (*Post, pp.* 399-404.)

Acts cited and construed: Acts 1887, ch. 183.

Constitution cited and construed: Art. 1, sec. 21.

Scott v. Marley.

9. SAME. Statute authorizing payment of fees of attorneys out of common fund in partition cases is not unconstitutional as depriving owner of property without due process of law and as denying the equal protection of the laws.

The said statute, in authorizing the payment of the fees of the attorneys out of the common fund or to be taxed as costs, in partition cases, is not unconstitutional as depriving an unconsenting party of his property without due process of law, and as denying to him the equal protection of the laws. (*Post*, *pp.* 399-404.)

Acts cited and construed: Acts 1887, ch. 183.

Constitution cited and construed: 14th am. (U. S.).

10. PARTITION. Fees of the attorneys of both parties may be fixed and paid out of the common fund.

The said statute providing that in all partition cases the court may, in its discretion, order the fees of the attorneys of both parties to be paid out of the common fund, is specially applicable where the tenants in common are numerous, and many of them own small interests; and the allowance, amount, and apportionment of the fees of the attorneys in such case is largely in the sound legal discretion of the court in which the partition suit is conducted, subject to review for abuse. No general rule should be laid down by the supreme court as to the application of this statute; but the fees of the attorneys of both parties may be allowed out of the common fund. (*Post*, *pp.* 404-414.)

Code cited and construed: Sec. 5035 (S.).

Acts cited and construed: Acts 1887, ch. 183.

---

FROM LAUDERDALE.

---

Appeal from the County Court of Lauderdale County. —GEO. W. YOUNG, Judge.

Scott v. Marley.

J. W. KIRKPATRICK & SON and FITZHUGH & BIGGS, for complainant.

MCKINNEY & PEARSON, and LEHMAN, GATES & MARTIN, for defendants. ·

ELIAS GATES, guardian *ad litem* for minor defendants.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

The primary question involved in this suit is the validity of chapter 183 of the Acts of 1887, which is carried into Shannon's Code as section 5035. This act is assailed as unconstitutional and void. The act is as follows :·

"An act to regulate the practice in partition cases, and to provide for the expense of the same.

"Section 1. Be it enacted by the general assembly of the State of Tennessee that in all partition cases in the courts of this State, the court may in its discretion order the fees of the attorneys for the complainant and defendant to be paid out of the common fund, where the property is sold for partition, and taxed as cost in cases where the property is partitioned in kind.

"Sec. 2. Be it further enacted that this act take effect from and after its passage, the public welfare requiring it."

The first ground of assault upon this act is that it vio-

lates section 2 of article 2 of the constitution of Tennessee, in that, as claimed, the legislature in its passage delegated legislative functions to the judicial department.

The argument in support of the above contention is that under this act the judge of the court may exercise the discretion conferred at his pleasure; that he may exercise it in one case, and not in another; that he may exercise it in one county, and not in another; that, in short, his will is the law, and his arbitrary discretion the measure of right between the parties. This contention, we think, is a misconstruction of the act. In the first place, the discretion which is conferred on the judge is a judicial discretion, and is not an arbitrary, vague, or fanciful discretion, but is a legal and regular power or discretion, the abuse of which by the judge is subject to review by writ of error or by appeal.

A judicial discretion is defined by Lord Coke to be *"discernere per legem quid sit justum,"* or "to see what would be just according to the laws in the premises." Lord Mansfield says on the same subject: "Discretion when applied to a court of justice means sound discretion guided by law. It must be governed by rule, not by humor. It must not be arbitrary, vague, and fanciful, but legal and regular." 23 Cyc., p. 1617.

Judicial discretion in its broadest meaning is that sense of right and justice from which has sprung a vast array of legal and equitable principles never written in any constitution, code, or legislative act, but which

nevertheless by the sanction and approval of the courts have become component parts of the law of the land. In its narrower sense it is the capacity of the individual judge presiding over a particular court to perceive and apply to the facts of each case in judgment the law of the land, so that in each case the rights of the parties under the facts of the case may be declared and enforced according to the law of the land.

By the act of 1887, the legislature did not delegate legislative power to the court. The only power attempted to be conferred upon the court by this act is to determine a state of facts in each particular case, wherein, according to the law of the land, attorney's fees in partition cases should be taxed as costs or paid out of the common fund. By the application of this act, the court does make the law. It only finds the facts in cases where the law applies. The law is made by the legislature in the passage of the act, and the court simply exercises a sound judicial, and, in case of abuse, reviewable discretion in applying the law to the facts. The court exercises the same kind of judicial discretion when it apportions costs between parties, and when it delivers instructions to the jury, and when it does numberless other things which courts do, and have done from time immemorial, and which are necessary to be done by courts in the administration of justice.

It is not within the constitutional power of the legislature to delegate its power, but it may make a law and delegate to the courts the power and discretion to find

the state of facts to which the law applies, and, if the law so made be within the limits of the constitutional power of the legislature, then the fact that coupled with the legislative act is a delegation of power to the courts to apply the law, and to exercise a judicial discretion in its application, does not vitiate the law. *Locke's Appeal,* 72 Pa., 491, 13 Am. Rep., 716; *Moers* v. *Reading,* 21 Pa., 202.

"The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend. To deny this would be to stop the wheels of government." *Samuelson* v. *State,* 116 Tenn., 486, 95 S. W., 1016, 115 Am. St. Rep., 805.

Strictly speaking, the act of 1887 need not have vested any discretion in the courts to apply the act, for the discretion so to do belongs to the courts, under the constitution, but the fact that the act does assume to delegate a discretion to the courts, which the courts already possess, does not vitiate the act. The legislative will is registered in the words of the act as follows:

"That in all partition cases in the courts of this State, the fees of the attorneys for the complainant and defendant may be paid out of the common fund, where the property is sold for partition and taxed as costs where the property is partitioned in kind."

The balance of the act as to the discretion of the courts is merely surplus, but wholly harmless legislative

energy.   Much more might be said in defense of this act under the first ground on which it is assailed, but it is believed that the foregoing is conclusive, and we are satisfied that the first ground of assault is not well taken.

The second ground of impeachment of this act is that it violates article 2, section 17, of the constitution of Tennessee, in that as claimed the title of the act does not express the subject of the legislation in the body of the act.

This objection is not well taken under our authorities.

"The enactment must come within the title, but in no case is it required to cover the whole domain within the title.   The constitution forbids that an enactment shall go beyond the limits of its title, but there is no requirement that it shall completely fill it.   Our statute books afford numerous instances of somewhat meager enactments under ample titles, and there are perhaps but few of those with broad and general titles that would not admit of some additional provision."

The foregoing is a quotation from the opinion of this court in *State* v. *Schlitz Brewing Co.,* 104 Tenn., 728, 59 S. W., 1035, 78 Am. St. Rep., 941.   To the same effect, see *State* v. *Yardley,* 95 Tenn., 546, 32 S. W., 481, 34 L. R. A., 656; *Cannon* v. *Mathes,* 8 Heisk., 519; *Frazier* v. *Railway Co.,* 88 Tenn., 140, 12 S. W., 537; Cooley's Const. Lim. (5th Ed.), p. 174.

The title to the act of 1887 certainly gives ample notice of the legislation covered by the body of the act; and, this being true, the constitutional requirement is met,.

and the second objection, we think, is therefore not well taken.

The third objection to the act is also based on section 17 of article 2 of the constitution of Tennessee on the ground that it violates that portion of said section, which requires that no bill shall become a law which embraces more than one subject, that subject to be expressed in the title.

The answer to this criticism of the act is that only one subject is covered by the title of the act. The one subject covered is the practice in partition cases. This in itself is a sufficient answer to the objection, and this objection is therefore not well taken, and the act on this point is well sustained by the following Tennessee authorities: *Cannon* v. *Mathes,* 8 Heisk., 504; *Luehrman* v. *Taxing District,* 2 Lea, 426; *Morrell* v. *Fickle,* 3 Lea, 79; *Frazier* v. *Railroad,* 88 Tenn., 156, 12 S. W., 537; *Cole Mfg. Co.* v. *Falls,* 90 Tenn., 469, 16 S. W., 1045; *State* v. *Yardley,* 95 Tenn., 554, 32 S. W., 481, 34 L. R. A., 656; *Peterson* v. *State,* 104 Tenn., 131, 56 S. W., 834; *Condon* v. *Maloney,* 108 Tenn., 99, 65 S. W., 871; *Furnace Co.* v. *Railroad Co.,* 113 Tenn., 727, 87 S. W., 1016.

There are four other grounds of assault upon this act, which are as follows: That it violates article 1, section 8, of the constitution of the State of Tennessee. The point of this objection is that the act authorizes the payment of attorney's fees out of a common fund, resulting from the sale of property of which the complainant and the defendant are tenants in common, and therefore, so

far as any unwilling or unconsenting party to the suit is concerned, is a taking of property other than by the judgment of the peers of such party, or other than by the law of the land.

The next objection is that the act violates article 11, section 8, of the constitution of Tennessee, in that it is a species of class legislation thereby condemned.

The next objection to the act is that it violates article 1, section 21, of the constitution of Tennessee, in that it authorizes the taking of a fund, resulting from the sale of a common property of which fund an unconsenting party may be part owner, and applying a portion of his interest in such fund to the payment of the fee of an attorney, who was not employed by such unconsenting party, and therefore amounts to a taking or application of the funds of the unconsenting party without just compensation to him, and contrary to the provisions of said section of the constitution.

The next and last objection to the act is that it violates the fourteenth amendment to the constitution of the United States, in that the act authorizes the application of a common fund of which an unconsenting party is part owner, to the payment of attorney's fees, not contracted for by the unconsenting party, and therefore deprives such unconsenting party of his property without due process of law, and denies to him the equal protection of the laws.

These last four objections to the act may properly be treated as one. It is a complete answer to each and all

of the objections to the act to say that the application of the fund of an unconsenting party to the payment of attorney's fees in a partition suit, under the judgment of the court in which the partition, by sale or in kind, of the common property is accomplished, where the judgment is properly exercised, is according to the law of the land, and is due process of law; and that the placing of partition suits in a class to themselves is not arbitrary or capricious classification, such as is prohibited by the foregoing sections of the State constitution, and the fourteenth amendment to the constitution of the United States. This is true because it is apparent that partition suits naturally and reasonably belong in a class by themselves, whether the partition be accomplished in kind, or where that cannot be done, by a sale of the common property. Therefore such a proceeding, whether the partition be made in kind or by sale, is made for the benefit of all the parties interested as owners of the property.

It is further apparent that inasmuch as such a proceeding is for the benefit of each and all of the interested parties, and inasmuch as the legal services necessary to be rendered in order to effectuate a partition in kind or a sale of the property are such in their nature as usually may be performed by one attorney or one firm, that such services when so rendered by one attorney or one firm are properly chargeable, according to principles of right and justice against the common fund, if the partition be

Scott v. Marley.

by sale or against the common property if the partition be accomplished in kind.

It is likewise apparent that, when such services are rendered by one firm or one attorney, the services have inured to the benefit and advantage of each owner of the common property, and that compensation should, according to principles of justice, be made to the person or persons rendering the service by each of the common owners in proportion to the interest of each in the common property; therefore, when payment for attorney fees, under such circumstances is made, it cannot be said that the property of any unconsenting party, or any party who has not taken part in the employment of the attorney, or firm, rendering the common service, has been taken or applied to the payment of the debt of any other person. On the contrary, where the attorney's fees are taken out of the common fund, or taxed as a charge against the common property, each owner pays in proportion to his interest in the property that amount of the fee, for which as an owner of the common fund, or as an owner of the common property, the exact equivalent of service has been rendered to him, and for his benefit in proportion to the amount which has been charged against his interest in the common property, or of the amount which has been substracted from his interest in the common fund, in order to pay and discharge the claim of the attorney or firm for services rendered in securing the partition in kind, or the sale of the property.

124 Tenn.—26

The foregoing is manifestly the theory, and the whole theory, upon which the act of 1887 is based, and this theory of the legislation is a complete answer to the various objections above named, that the act authorizes the taking of the property of an unconsenting party to discharge the debt of another person, or that it is the taking of the property of such party without just compensation, or that it is the taking of the property of such party without due process of law.

The answer is equally conclusive and satisfactory to the objection made that the placing of partition suits in a class by themselves in an unnatural and palpably arbitrary and capricious act on the part of the legislature.

"Many things are necessary in a suit for partition for which expense must be incurred which can rarely or never arise in other suits or actions, and when necessary they may be procured and paid for, and the amount so paid be allowed to the party making payment, such, for instance, as the drawing of the commissioners' return, and the making of all books and plats required as a part thereof, or in connection therewith, the expenses of procuring the services of necessary surveyors, and the making of surveys, of giving notice of, and conducting sales, of the services of the commissioners or referees, . . . of procuring the attendance of witnesses, or the services of auctioneers, or of guardians *ad litem.*" 30 Cyc., p. 294.

And it may well be said, in addition to the above, that in such suits the adjustment of costs between the inter-

ested parties, and the question of attorney's fees and the adjustment of the burdens of such fees between the parties interested in the property, are matters which, as before remarked, in the very nature of the environment of the parties, and the common interest in the subject-matter of the litigation places partition suits naturally and reasonably in a class by themselves, and apart from other classes of suits, and they have been so classified by our legislation prior to the act of 1887. *Bierce* v. *James,* 87 Tenn., 538, 11 S. W., 788.

The subject of constitutional classification of objects for legislation has been so often before this court that we deem it unnecessary in this opinion to attempt to trace analogies between this and other classifications which have been sustained, and it will suffice here to say that we think the classification made by chapter 183 of the act of 1887, now carried as section 5035 of Shannon's Code, is a reasonable and natural one, and not obnoxious to any provision of the constitution of the State, or of the United States, as will appear by examination of the following authorities: *Davis* v. *State* 3 Lea, 379; *Condon* v. *Maloney,* 108 Tenn., 82, 65 S. W., 871; *State* v. *Schlitz Brewing Co.,* 104 Tenn., 715, 59 S. W., 1033, 78 Am. St. Rep., 941; *Demoville* v. *Davidson County,* 87 Tenn., 215, 10 S. W., 353; *Cook* v. *State,* 90 Tenn., 407, 16 S. W., 471, 13 L. R. A., 181; *Railroad* v. *Crider,* 91 Tenn., 490, 19 S. W., 618; *Turnpike Cases,* 92 Tenn., 369, 22 S. W., 75; *Dugger* v. *Ins. Co.,* 95 Tenn., 245, 32 S. W., 5, 28 L. R. A., 796; *Henley* v. *State,* 98 Tenn., 667, 41 S. W., 352,

1104, 39 L. R. A., 126; *Debardelaben* v. *State,* 99 Tenn., 649, 42 S. W., 684; *Railroad* v. *Harris,* 99 Tenn., 684, 43 S. W., 115, 53 L. R. A., 921; *Harbison* v. *Knoxville Iron Co.,* 103 Tenn., 421, 53 S. W., 955, 56 L. R. A., 316, 76 Am. St. Rep., 682; *Id.,* 183 U. S. 21, 22 Sup. Ct., 1, 46 L. Ed., 55; *Dayton Co.* v. *Barton,* 103 Tenn., 604, 53 S. W., 970, affirmed by the Supreme Court of the United States, 183 U. S., 23, 22 Sup. Ct., 5, 46 L. Ed., 61; *Leeper* v. *State,* 103 Tenn., 500, 53 S. W., 962, 48 L. R. A., 167; *Neas* v. *Borches,* 109 Tenn., 398, 71 S. W., 50, 97 Am. St. Rep., 851.

Time and space are not at our command to comment upon the authorities to which we are cited in the able brief of counsel assailing the constitutionality of the act. Suffice it to say we do not regard them as of controlling weight against the views herein expressed.

The constitutionality of chapter 183 of the act of 1887 being established, the next questions presented by this case arises upon five assignments of error leveled at the final decree of the county court of Lauderdale county in which the cause originated, and was conducted as a partition proceeding. Said assignments of error are as follows:

"First. The lower court erred in ordering or adjudging that any of the fees for the solicitors representing adult parties should be paid out of the general fund, because there is no principle of equity jurisprudence nor any statute which justifies such action, and the only authority or warrant for the court to allow the said fees

Scott v. Marley.

for the adult parties out of the general fund is to be found in the acts of the general assembly of Tennessee of 1887, ch, 183, which said act is unconstitutional.

"Second. The lower court erred in adjudging and decreeing that the fee for the complainants' solicitors should be paid out of the general fund.

"Third. The lower court erred in adjudging and decreeing that the fee for the guardian *ad litem* should be paid out of the general fund in this cause.

"Fourth. Assuming that the action of the lower court in ordering the fees for complainant's solicitors be paid out of the general fund is proper, then nevertheless the lower court erred in allowing a fee of $4,500 to the complainant's solicitors, because such fee is unreasonable and exorbitant.

"Fifth. Assuming that the lower court has power and jurisdiction to allow fees to attorneys for the adult parties out of the general found, then the lower court erred in allowing and awarding to the attorneys for complainant a fee of $4,500 and in denying to the attorneys for the defendant the payment of any fee out of the general fund."

The first, second, and third assignments of error are each predicated upon the invalidity of the act of 1887, and under the views already set out must be overruled.

The fourth and fifth assignments of error raise the only remaining questions, and may be disposed of together. This necessitates a comprehensive but necessarily brief view of the proceedings in the county court.

The suit was for the partition of the lands owned by Capt. Joe C. Marley, who died intestate on the 11th day of May, 1909, a resident of Lauderdale county, Tenn. He was an unmarried man, and died leaving no direct issue. His real estate consisted largely of timbered lands, located in the lowlands of the Mississippi river. His heirs at law were one full sister, Mrs. M. H. Scott, the complainant in the partition suit, one half-brother, W. H. Marley, whose interest in the estate was purchased by Mrs. M. H. Scott, prior to the filing of this suit. By this purchase and by inheritance, Mrs. Scott became entitled to one-third of the land of the intestate. The remainder of the land was inherited by the heirs at law of four half brothers and sisters, all of whom had died before the intestate. These heirs at law were residents of Tennessee, Arkansas, Louisiana, Texas, and perhaps of other States. Many of these heirs at law were unknown, and, in advance of the filing of the bill, it was necessary that their names and places of residence should be ascertained, and also necessary that a description of the lands owned by the intestate should be obtained.

The law firm of J. W. Kirkpatrick & Sons was employed by Mrs. M. H. Scott to accomplish a partition of the estate, and after performing the very considerable labor, hereinbefore indicated, this firm filed the partition bill. Among other labors, it became necessary for one member of this firm to make a journey to Goldsmith, Tex., some four hundred or five hundred miles west of Dallas, and to make a drive some ten miles in the country

for the purpose of taking the deposition of some witnesses residing there, and whose depositions were necessary in the cause.  It also became necessary for this firm to have a receiver appointed for the purpose of collecting the rents on the land for the years 1909 and 1910, and to render advice and assistance to the receiver.  The appointment of this receiver brought into the case for distribution $4,037.60.

This firm also filed an amended bill for the purpose of bringing in some heirs at law whose names had been omitted in the original bill.  This firm also took depositions of six witnesses in addition to the depositions of a number of other witnesses taken for the purpose of determining what would be reasonable attorney's fees for the solicitors of the complainant, and for the guardian *ad litem*, and of the counsel representing the defendant in the cause.

The lands of the intestate consisted of some fifteen tracts of timbered lands, and several farm tracts located at different points in the county of Lauderdale, most of which, however, consisted of timbered lands situated in the Mississippi lowlands, as already stated.

Various papers prepared by the firm of J. W. Kirkpatrick & Son, as appears from the record, were as follows: The original bill covered some seventeen pages of the record; two orders of publication; four orders *pro confesso;* one order to set aside *pro confesso;* one order of revivor; one order for the appointment of a surveyor; an order opening bids; an order of reference; an order to

pay out funds; petition to open biddings; receiver's bond; the report of the receiver; a supplemental bill covering some nine pages of the record; two amendments to the bill; an order appointing receiver to collect rents; two orders appointing guardian *ad litem,* etc.

The firm also took an active interest in advertising the lands for sale, and in securing bidders for the lands in the partition sale. The lands of the estate were decreed to be sold for partition, instead of being divided in kind.

Defendants to the partition proceedings who were adults, were represented in the cause by Messrs. Lehman, Gates & Martin, and McKinney & Pierson. The minor defendants in the cause, some five or six in number, who were entitled to an interest in the proceeds of the sale, approximating some $1,200, were represented by Mr. Elias Gates, their guardian *ad litem;* Mr. Gates being a member of the firm of Lehman, Gates & Martin. The contest here is between the law firm, which represented the complainant in the suit, and the two law firms which represented the defendants in the suit, in the interest of their respective clients. The net result in dollars and cents of this proceeding was as follows:

Proceeds of land sale .................... $50,343 50
Rents, amounting to .................... 4,037 67

Making a total of ...................... $54,381 17

The county court allowed a fee amounting to $4,500 to the attorneys for the complainant, J. W. Kirkpatrick

& Son, and directed that the same be taxed as costs and paid out of the common fund belonging to the complainant and the defendant in the cause..

Said court further decreed that a reasonable fee for the guardian *ad litem,* Elias Gates, was the sum of $500, and directed that said sum be paid out of the costs of the cause. The court also decreed that the sum of $2,500 was a reasonable fee to be charged by the solicitors of the adult defendants to their clients for services rendered in said cause, but declined to allow said fee to be taxed against the common fund in the cause as costs thereof.

There is much proof in the record from members of the Ripley bar tending to show that the services rendered by the contending parties herein were reasonably worth the amount, which the court decreed in favor of each firm as aforesaid.

As to the services rendered by the attorneys representing the defendants Mr. McKinney, now Chancellor McKinney, testified as follows:

"The first thing we did was to have the *order pro confesso* set aside entered against the defendants, to which there was no opposition. As I recollect the matter, we then filed answers for the guardian *ad litem.* We then began preparing for taking proof, etc., and consulted and acted in conjunction with solicitors for complainant in this matter. The first thing I did was to sit down and figure out the interest of the respective heirs of J. C. Marley (they being numerous), and I then discovered that some of the heirs were not before the court, and dis-

cussed the matter with solicitor for complainant, the result being that he prepared an amendment, making them parties and had publication made. We then discussed the taking of proof and it was decided to send J. W. Kirkpatrick, Jr., to Texas, to take deposition of some of the Marley relatives to prove who the heirs were, which was done.

"We then took the deposition of some local parties to prove the allegations of the bill, including the advisability of having the lands sold for partition. We also in conjunction with solicitors for complainants discussed the advisability of appointing a receiver, and we finally agreed to have G. M. Partee appointed receiver, which was done. I think solicitor for complainant prepared this order. We then discussed the advisability of having some of the larger tracts cut into smaller tracts, and decided that it was best, and Dave De Walt appointed to do the work, which he did, and I drew the order confirming his report and making an additional amendment to the bill, or rather I dictated same to the stenographer of complainant's solicitor. After this was done, it became necessary to revive the cause, a matter that was done by consent, except as to some minors, and the order reviving was drawn by solicitor of complainant, but I drew the order appointing Elias Gates guardian *ad litem* for the minors, and prepared and filed his answer for them.

"After this, I dictated to stenographer for solicitor for complainant the principal decree in the cause, adjudging the rights of the parties and ordering the lands sold. Of course, solicitor for complainant and myself

discussed together this matter as well as all other mat-
ters, and agreed what the decree should contain. After
the land was ordered sold, we did what we could to get
parties interested in the sale of the property, and I went
in person (taking me several days) and looked at all the
land, with the exception of two or three small tracts.

"I bid on nearly all of the tracts or had them bid on,
and know that, on account of my bidding, the lands sold
for several thousand dollars more than they would have
sold for had I not bid on same. For example, the two
lots on the square in Ripley were knocked off at the orig-
inal sale to complainant for $2,000. I raised the bid, and
was the only other person who bid on same, and ran it up
to $2,995. I prepared the decree confirming the sale as
well as all other papers and orders in the cause, not here-
in specified, as being prepared by solicitors for complain-
ant.

"In my opinion, this was the best land sale ever had in
Lauderdale county. I think it was conducted in the best
manner, and do not recall anything that solicitors for
any of the parties left undone, nor do I know of anything
that could have been done by any of the solicitors that
would have made the lands sell for more money.

"The parties were very numerous, scattered about the
Union. The lands were numerous, a good many perplex-
ing matters came up, and solicitors for both complain-
ant and defendant did a lot of good hard work."

Chapter 183 of the Acts of 1887 was designed to meet
just such a case as this record presents. The heirs at law

entitled to this estate were very numerous, being about thirty-five in number. Mrs. M. H. Scott, the complainant, owned a third interest; five of the defendants owned a one-thirtieth interest each; seven of the defendants owned a one-forty-second interest each; two of the defendants owned a one-twenty-fourth interest each; eight of the defendants owned a one forty-eighth interest each; five of the defendants owned a one two hundred and fortieth interest each; seven of the defendants owned a one three hundred and thirty-sixth interest each; some five or six of the defendants were minors.

To secure a partition of this property where the parties entitled were so numerous and so widely divergent in the matter of the amount of the interest to which each of them was entitled in the property required capable, intelligent, and industrious legal services, and it is manifest that the owner of a single small interest in this property would have been wholly unable to secure competent legal services, if the attorney representing that interest had been compelled to look alone to his client's interest in the estate for the payment of an adequate fee for the services necessary to be rendered in order to secure a partition, or a sale for the partition of this large property. So it is apparent that, in the absence of the statute, great injustice might be done to the owners of small interests in a large estate like this by a cotenant or cotenants owning a large interest. The latter might decline to institute a suit for partition or sale of the property, and gradually acquire by purchase at inadequate prices

each and all of the small interests in the estate; so that the statute is a protection when properly applied to the owner of small interests in a large estate.

It is an equal protection to the owner of a large interest in such an estate in that by a proper application of the statute a just apportionment of the burden of attorney's fees may be made between all the persons interested in the estate in proportion to the amount of interest which each one owns.

No general rule should be laid down by this court as to the application of this statute. Its application should be left to the sound discretion of the court in which the partition suit is conducted. When that court fails to make a just and equitable apportionment of the burden of attorney's fees as contemplated by the statute in partition cases, it is for an appellate tribunal to say whether such failure amounts to an abuse of the discretion, and, when such abuse exists, it should be corrected.

We think the present case is one in point. The county court, in the interests of the parties, should have apportioned the fees between the attorneys representing complainant and those representing the defendants. The greater volume of service was rendered by the attorneys for the complainant, but undoubtedly service of great value was also rendered by the attorneys for the defendants.

Under the facts of the case, the defendants were well warranted in the employment of the attorneys to look after their interests, and the attorneys so employed cooperated with the attorneys of the complainant, and prac-

tically all of the services rendered by the attorneys for the defendants resulted to the benefit of the complainant, as well as to the benefit of all the defendants, and the same may be said of the services rendered by the attorneys for the complainant. Moreover, the clients represented by the attorneys for the defendants were the owners of two-thirds of the estate, and the client, represented by the attorneys for the complainant, only owned one-third of the value of the estate. All of these facts should be taken into consideration in the apportionment of the fees.

We think the attorneys' fees, which were properly taxable as costs against the common fund in this case, should have been apportioned by the county court as follows, to wit:

A fee to J. W. Kirkpatrick & Son, solicitors for the complainant, amounting to the sum of $2,500.

A fee to Lehman, Gates & Martin and McKinney & Pierson, solicitors for the adult defendants, amounting to the sum of $2,400.

A fee to Elias Gates, guardian *ad litem* for the minor defendants, amounting to the sum of $100. And we think these fees should be in full of all services heretofore rendered or hereafter to be rendered by the attorneys above named to their respective clients in this cause.

It results from the foregoing views that the decree of the county court will be modified in accordance with this opinion, and the costs of this appeal will be taxed against the common fund in said partition suit as a part of the costs of said cause.