PETERSON v. STATE.

(*Nashville.* March 7, 1900.)

1. CONSTITUTIONAL LAW. *No-fence law not vicious class legislation.*

The Act of 1899 (Ch. 23), to prevent stock from running at large, and thereby obviate the necessity of fencing lands in the counties of this State having a population of 59,000 or more, according to the Federal census of 1890, or that shall have that number by any subsequent Federal census, is not vicious class legislation. The classifications of this Act are not arbitrary or capricious, but natural and reasonable, and based upon sound and substantial considerations affecting the public interests. (*Post, pp. 128–130.*)

Act construed: Acts 1899, Ch. 23.

Cases cited and approved: Cole Mfg. Co. v. Falls, 90 Tenn., 466; Cook v. State, 90 Tenn., 407.

2. SAME. *No-fence law does not embrace more than one subject.*

A statute whose general subject, as indicated by its title, is to prevent stock from running at large, and thereby obviate the necessity of fencing lands, is not rendered unconstitutional and void, as containing more than one subject; by providing, in addition to a general prohibition against the running of stock at large, that the owner who permits it shall be subject to indictment, and liable for all damages done, for which a lien is declared upon the trespassing animals. (*Post, pp. 130, 131.*)

Constitution construed: Art. II., Sec. 17.

Act construed: Acts 1899, Ch. 23.

Cases cited: Cole Mfg. Co. v. Falls, 90 Tenn., 466; Ryan v. Terminal Co., 102 Tenn., 111.

FROM DAVIDSON.

Appeal in error from Criminal Court of Davidson County. J. M. ANDERSON, J.

Wm. Hart and Anderson & Grissom for Peterson.

Attorney-general Pickle for State.

Beard, J. The plaintiff in error was convicted under an indictment charging him with a violation of Sec. 1 of Ch. 23, of the Acts of 1899. The defense below was (and it is renewed here) that this statute is unconstitutional, because, as insisted, it is arbitrary and unreasonble class legislation. It is entitled "An Act to prevent stock from running at large in counties of this State having a population of 59,000 or more, according to the Federal census of 1890, or according to any subsequent Federal census, and to prevent the necessity of fencing lands in counties that are now affected by this Act, or that may hereafter be affected by it."

This Act extends to all parts of the State. It fixes no limits within which counties failing in statutory qualifications at this time, but hereafter attaining it, shall not enter. On the contrary, each county, upon reaching the prescribed number in population, according to the Federal census, becomes at once entitled to the benefit of the statute. It being possible for all the counties of the State to bring themselves within its provisions, it is clear, upon the authority of many reported cases, that its constitutionality cannot be successfully impeached on the ground that it is

class legislation. *Cole Mfg. Co.* v. *Falls,* 90 Tenn., 466, and cases there cited.

The particular objection which is now being examined, was made and disposed of against the present contention in *Cook* v. *State,* 90 Tenn., 407. The Act there involved was one providing more stringent regulations in order to secure greater purity in elections, and by its terms was made "applicable to counties having a population of over seventy thousand, and cities of over nine thousand inhabitants, computed by the census of 1880, or may hereafter have such numbers by any subsequent Federal census," etc. In answer to the insistence that this was class legislation, the Court said: "That the law applies only to counties of 70,000 and cities of 9,000 inhabitants, does not impeach its validity. All counties and cities that have, or may hereafter have, the designated population, are embraced. It applies to all parts of the State, and each city and county may come within its provisions."

Neither is the classification provided by the statute capricious or unreasonable. While counties are thinly populated, and embrace within their limits extensive tracts of timbered and uncultivated land, there is no essential reason why the owners of cattle should keep them within inclosures. These large tracts afford fine pasturage, which would run to waste were not cattle permitted to run at large.

20 P—9

In addition, in such counties timber for fencing purposes is as cheap as it is abundant. Then the farmer who desires to protect his crops has but to fell and split the trees in order to get all the material necessary to make his inclosure. But it is otherwise in the thickly settled counties. As population has increased, the lands have been denuded of their forests, and wide areas have been converted from wild land into cultivated fields. It is a matter of common observation that in such a county it has become a serious economic problem to the farmer to secure his growing crops from the depredation of vagrant stock. With diminishing forests and increasing cost of fencing material, it is an annual burden, getting heavier all the time, to provide suitable protection against these recurring invasions. The Legislature, recognizing the wide difference in these two conditions, and, we think, in the counties provided for, wisely placed the duty of looking after cattle rather upon their owner than upon the owners of farms.

Again, it is objected that the Act embraces two subjects, one of which is foreign to its title, and is therefore violative of Sec. 17 of Art. II., of the Constitution.

The caption of the Act, already set out, clearly indicates the will of the Legislature to correct this growing evil in counties to which it, by its

terms, applies. In terms, it is a repressive statute. Its evident purpose is to give protection to the owners of cultivated lands. To accomplish this it was not sufficient, after declaring in the first section that in such counties it shall be unlawful in the owner to permit his cattle to run at large, and in the fourth section to make a violation of this Act a · misdemeanor, punishable by a fine of from $5 to $15. To give the statute full force and effect, it was necessary to make provision for those for whose protection it was enacted. This was done in the second and third sections. These sections, in substance, provide that the owner who permits his stock to run at large shall be liable for all damage done by them to the property of other persons, and gives a lien, enforceable by attachment, to the party injured, upon the cattle doing the injury.

We think these sections are within the scope of the caption and natural parts of the body of the Act. *Cole Mfg. Co.* v. *Falls; Ryan* v. *Terminal Co.,* 102 Tenn., 111.

Other objections are disposed of orally.

The judgment of the lower Court is affirmed.