Hall v. State.

HARRY C. HALL v. STATE.

(*Nashville.*  December Term, 1910.)

1. **CONSTITUTIONAL LAW.**  Legislation applicable to counties having a population within designated limits according to the existing or any subsequent census is not unconstitutional as for vicious classification.

The provisions of the constitution of this State (art. 1, sec. 8, and art. 11, sec. 8) and that of the United States, contained in the fourteenth amendment thereto, do not prohibit the enactment of laws not general in their application, where the classification is natural, and has a reasonable relation to the subject-matter of the legislation; and a statute applicable in counties having a designated population by the last federal census, or by any subsequent federal census, is not within such constitutional prohibitions; for such classification is not arbitrary, vicious, or capricious. (*Post, pp.* 238-240.)

Constitution cited and construed:  Art. 1, sec. 8, and art. 11, sec. 8 (State);* 14th am. (U. S.).

Cases cited and approved:  Woodard v. Brien, 14 Lea, 523; Cook v. State, 90 Tenn., 407; Sutton v. State, 96 Tenn., 696; Peterson v. State, 104 Tenn., 127; Condon v. Maloney, 108 Tenn., 82-98; Turner v. State, 111 Tenn., 593-602; Archibald v. Clark, 112 Tenn., 532; Murphy v. State, 114 Tenn., 531.

2. **STATUTES.**  Construction to ascertain and give effect to legislative intent.

The courts, in construing a statute, must give effect to its intent; for the intent of a statute is the law, and the primary rule of construction is to ascertain and give effect to that intent. (*Post, p.* 240.)

3. **SAME. Same. Entire statute must be considered in construing it, and effect given to every part, if possible.**

The courts, in ascertaining the intent of a statute, must consider the entire statute, and give effect, if possible, to every part thereof. (*Post, p.* 240.)

4. **SAME. Construction to carry out manifest object, and not to defeat it, if susceptible of two constructions.**

Where a statute is susceptible of two constructions, one of which will carry out its manifest object, and the other will defeat it, the former construction must be adopted; for a statute must be construed with reference to its manifest object. (*Post, pp.* 240, 241.)

5. **SAME. Construction with a view to reason and convenience, and to avoid absurdity, hardship, injustice, or inconvenience.**

In construing a statute, what it reasonable and convenient or what will cause hardship and injustice must be considered; and statutes must be construed in the most beneficial way permitted by law, to prevent absurdity, hardship, injustice, or inconvenience. (*Post, p.* 241.)

6. **SAME. Applicable in certain counties according to population of last or any subsequent federal census remains so applicable notwithstanding population changes; and becomes applicable to all other counties coming within its classification under any subsequent census.**

A statute made applicable in counties having a population, within designated minimum and maximum limits, according to the last (then existing) or any subsequent federal census, is applicable in all counties coming within its provisions when passed, and remains in force and continues applicable in said counties, notwithstanding any changes that may occur in their population as shown by any future federal census, and until it shall be repealed by proper legislative act; and it applies in all other counties that may come within its provisions by changes in their population as shown by any future federal census. (*Post, pp.* 238, 241-243.)

Acts cited and construed: Acts 1903, ch. 263.

Hall v. State.

7. **SAME. Rule of public policy that all laws shall be certain in their terms and application must be applied in construing statutes.**

One rule to be applied in the construction of statutes is the rule of public policy that all laws shall be certain in their terms and application, so that they may be known by the people, and that no disturbances may grow out of frequent changes and alterations. (*Post, p.* 242.)

8. **CONSTITUTIONAL LAW. Construction making a statute once applicable in a county, under a population classification, always applicable, regardless of future population, does not render it unconstitutional as arbitrary class legislation.**

The construction given the statute as stated in the sixth head-note does not render it void and unconstitutional as arbitrary class legislation, because such construction makes it impossible for any county, by a change in its population according to a subsequent federal census, to pass out of the classification that at first made the law applicable in it. (*Post, pp.* 238, 243-246.)

Constitution cited and construed:    Art. 1, sec. 8; art. 11, sec. 8.

Cases cited and approved:    Cook v. State, 90 Tenn., 407; Peterson v. State, 104 Tenn., 127; Condon v. Maloney, 108 Tenn., 82.

Cases cited and and distinguished:    Woodard v. Brien, 14 Lea, 523; Sutton v. State, 96 Tenn., 696.

FROM MONTGOMERY.

Appeal in error from the Criminal Court of Montgomery County.—C. W. TYLER, Judge.

COLLIS TATE, for Hall.

ATTORNEY-GENERAL CATES and AUSTIN PEAY, for State.

MR. CHIEF JUSTICE SHIELDS delivered the opinion of the Court.

The facts in this case are not disputed. The defendant was indicted under chapter 263 of the Acts of 1903. The act is a stock law, and is applicable to those counties having a population, by the census of 1900, of not less than 35,000, nor more than 36,250, or having a like population by any subsequent census. Montgomery county, by reason of its population under the census of 1900, fell within the act, and it applied to that county. It was, in fact, the only county to which the act applied according to the census of 1900.

This case was tried in the criminal court of Montgomery county on an agreed statement of facts. If the application of the act to Montgomery county is not affected by the subsequent census of 1910, the defendant is guilty, and the case should be affirmed.

It is insisted for the plaintiff in error that, because the census of 1910 shows Montgomery county to have a population of 33,672, the act does not apply to that county.

For the State it is said that the application of the act to the county has not been affected by the last census,

and that it continued in force in all counties falling within it when passed, and the sole effect of the subsequent census has been to bring other counties within its operation.

The provisions of the constitution of this State (art. 1, section 8, and article 11, section 8) and that of the United States, contained in the fourteenth amendment to that instrument, do not prohibit the enactment of laws not general in their application, where the classification is natural and has a reasonable relation to the subject-matter of the legislation.

It is only where the classification is arbitrary and capricious that it is held to be vicious and violative of those constitutional restrictions.

It is now well settled in this State that statutes making a classification of the character of the one in question are not violative of the constitutional provisions to which we have referred, but are valid and constitutional laws. *Cook* v. *State,* 90 Tenn., 407, 16 S. W., 471, 13 L. R. A., 183; *Peterson* v. *State,* 104 Tenn., 127, 56 S. W., 834; *Condon* v. *Maloney,* 108 Tenn., 82-98, 65 S. W., 871; *Turner* v. *State,* 111 Tenn., 593-602, 69 S. W., 774; *Archibald* v. *Clark,* 112 Tenn., 532, 82 S. W., 310; *Murphy* v. *State,* 114 Tenn., 531, 86 S. W., 711.

It will be seen by an examination of this act that it in express terms applies to counties having a certain designated population, not only according to the federal census of 1900, but according to any subsequent federal census, and the principle upon which such acts have

been sustained is that the classification is not arbitrarily based upon or applied to a population determined or determinable by any one census, but that it is so arranged that it is possible thereunder to receive into the classification every county in the State. The acts sustained in the cases we have cited were of this character.

If the act had applied only to counties having the named and designated population according to the federal census of 1900, there is no doubt but that it would be capricious and arbitrary, as no other county could at any time come within its provisions. *Woodard* v. *Brien,* 14 Lea, 523; *Sutton* v. *State,* 96 Tenn., 696, 36 S. W., 697, 33 L. R. A., 589.

We will now determine the proper construction of the act. It is elementary that "the intent of a statute is the law," or, as stated in Sutherland on Statutory Construction, section 363: "The intent is the vital part, the essence, of the law, and the primary rule of construction is to ascertain and give effect to that intent."

And (sections 368, 380), in ascertaining the intent, the entire statute is to be considered, because "it is an elementary rule of construction that effect must be given, if possible, to every word, clause, and sentence of a statute."

And, further, the same learned author quotes approvingly (section 369): "A statute is to be construed with reference to its manifest object, and if the thing is susceptible of two constructions, one which will carry out,

and the other which will defeat such manifest object, it should receive the former construction."

Again (section 267), it is said that in the construction or interpretation of statutes "an argument based on inconvenience is forcible in law, and no less so is one to avoid what is unjust or unreasonable. . . . "

"Considerations of what is reasonable, convenient, or causes hardship and injustice, have a potent influence in many cases."

And still again (section 490) it is said: "Statutes will be construed in the most beneficial way which they are, in law, permitted, to prevent absurdity, hardship, or injustice, or to favor public convenience, and to oppose all prejudice to public necessities." Section 488.

That this statute was intended by the general assembly to apply to Montgomery county must be conceded. It is the only county having the population of the census of 1900 named in the act, and was clearly within its provisions.

The question for determination is whether or not it was the intention of the general assembly that its application to that county should be fixed and continuous, notwithstanding any changes that might occur in its population as shown by any future census, until it should be repealed by proper legislative act.

We think clearly such was the intention of the legislature and that the statute is effective to carry out that intention.

In other words we are of the opinion that the intention

of the general assembly was to enact a law applicable
to all counties coming within its provisions when passed,
and to remain in force and continue applicable to the
class then created until repealed, and to apply to all oth-
er counties that might come within such provisions by
changes in their population as shown by any future cen-
sus.

This construction is supported by the rule of public
policy that all laws shall be certain in their terms and
application, so that they may be known by the people,
and that no disturbances may grow out of frequent
changes and alterations.

It is also demanded by the interest and convenience of
the people of the counties to which this and similar stat-
utes when enacted do apply. The object and purpose of
the statute was to save the people of the counties to
which it applied the great expense incident to maintain-
ing fences for the protection of cultivated lands. It is
not conceivable that the general assembly would enact a
law temporary in its duration, which could be changed
in its application without the consent of the people in
whose interest it was passed, through their representa-
tives, which has caused and induced them to abandon or
remove fences costing thousands of dollars, and abso-
lutely necessary for the protection of their crops. The
effect of holding this law no longer applicable to Mont-
gomery county, or a similar law applicable to other
counties no longer applicable, because of the change of
population, would not only result in great inconvenience

and expense to the people of those counties, but bring about a condition of affairs that would be impossible to remedy and most disastrous in its consequences.

It is said, however, that, if the act be given this construction, it is then arbitrary class legislation and void, because it is made impossible for any county to withdraw from its application by a change in its population.

The cases of *Woodard* v. *Brien,* 14 Lea, 523, and *Sutton* v. *State,* 96 Tenn., 696, 36 S. W., 697, 33 L. R. A., 589, are relied upon to support this contention. These cases are not in point. The classification there was governed by a past census, and it was impossible for any county at any time, not having the named population by that census, to come within the provisions of the act.

It is true, that in the latter case, in the argument of Judge Caldwell, it is said that a statute must be so that a county by change of population can pass out of the classification made, and that this was as necessary as that other counties might come within it. This question, however, was not involved in that case, and what is there said is mere *dictum.*

Other cases involving the constitutionality of similar statutes make no reference to this reasoning of Judge Caldwell, but hold that, if other counties by a change in the population may come within the class, it is sufficient to make the classification natural and reasonable and valid.

In *Cook* v. *State,* 90 Tenn., 407, 16 S. W., 471, 13 L.

R. A., 183, there was involved the constitutionality of the Dortch law (Acts 1890, ch. 24), entitled "An act to provide more stringent regulations for securing the purity of elections in this State, and applicable to counties having a population of over seventy thousand and cities of over nine thousand inhabitants, computed by the census of 1880, or may hereafter have such numbers by any subsequent federal census," etc.

The constitutionality of this act was challenged, among others, upon the ground that it was partial legislation, and that its classification was arbitrary; but this court, replying to this contention, said:

"That the law applies only to counties of 70,000 and have cities of 9,000 inhabitants does not impeach its validity. All counties and cities that have or may hereafter have the designated population are embraced. It applies to all parts of the State, and each city and county may come within its provisions.

In *Peterson* v. *State,* 104 Tenn., 127, 56 S. W., 834, the constitutionality of Acts of 1899, ch. 23, was challenged upon the ground that it was a partial law, and that its classification was unreasonable and arbitrary. The title of this act was as follows:

"An act to prevent stock from running at large in counties of this State having a population of 59,000 or more, according to the federal census of 1890, or according to any subsequent federal census, and to prevent the necessity of fencing lands in counties that

are now affected by this act, or that may hereafter be affected by it."

The court approved its holding in the Cook Case, and among other things said:

"This act extends to all parts of the State. It fixes no limits within which counties failing in statutory qualifications at this time, but hereafter attaining it, shall not enter. On the contrary, each county, upon reaching the prescribed number of population, according to the federal census, becomes at once entitled to the benefit of the statute. It being possible for all the counties of the State to bring themselves within its provisions, it is clear, upon the authority of many reported cases, that its constitutionality cannot be successfully impeached on the ground that it is class legislation."

In *Condon* v. *Maloney,* 108 Tenn., 82, 65 S. W., 871, was involved the constitutionality of what is known as the "Knox County Road Law," which applied only "to counties having a population of not less than 70,000 and not more than 90,000, under the federal census of 1900, or any subsequent federal census."

In sustaining the constitutionality of this act, this court said:

"By its terms it applies with uniformity to all counties which had the requisite population at the time of the passage of the act, and to all such as hereafter may fall within its provisions, as indicated by it."

The declaration here is that the act applied, not only to those counties which had the requisite population at

Hall v. State.

the time of the passage of the particular act, but also all such as thereafter might fall within its provisions. In other words, the classification was prospective in its operation, permitting other counties to come into the classification of the benefits prescribed by the act; but it did not permit counties to fall out of the classification merely by a change in population above or below the designated number. By this construction it is possible for all the counties of the State to eventually come within the provisions of the act.

It is immaterial whether the population of a county falling within a class created when the act is passed increases or decreases, so as to have that of some other class. It remains in the class in which it fell when a particular act was passed.

The act in question continues in force in Montgomery county, and the judgment of the trial court is affirmed.