### IN THE

# SUPREME COURT OF TENNESSEE

#### FOR THE

## EASTERN DIVISION

---

### KNOXVILLE, SEPTEMBER TERM, 1920.

---

### J. E. FOLKNER *v.* C. F. WHITEHURST *et al.*

#### (*Knoxville.* September Term, 1920.)

1. **ANIMALS.** Fence law not repealed by statute prohibiting running at large.

   Pub. Acts 1899, chapter 23, as amended by Pub. Acts 1901 chapter 114, prohibiting the running at large of stock in counties having specified population, *held* to repeal by implication Code 1858, sections 1682-1685, requiring planter to fence land, and providing that, if a fence sufficient to keep stock out has not been constructed, the owner of the stock should not be liable for damage done by such stock. (*Post, pp.* 71-74.)

   Acts cited and construed: Acts 1899, ch. 23; Acts 1901, ch. 114; Acts 1919, ch. 651; Acts 1905; ch. 504; Acts 1911, ch. 269.

   Cases cited and approved: Chemical Co. v. Henry, 114 Tenn., 152.

   Case cited and distinguished: Peterson v. State, 104 Tenn., 127.

   Code cited and construed: Secs. 1682-85 (1858).

2. **ANIMALS.** Statute prohibiting running at large not repealed by fence law.

Folkner v. Whitehurst.

Acts 1905, chapter 504, and Priv. Acts 1911, chapter 269, defining lawful fences in rural districts of counties of special population, does not impliedly repeal Pub. Acts 1899, chapter 23, as amended by Pub. Acts 1901, chapter 114, prohibiting the running at large of stock within counties having specified population, in so far as it was applicable to counties to which the Acts of 1905 and 1911 were applicable. (*Post. pp.* 74, 75.)

Case cited and approved: Chattanooga Ry. & Lights Co. v. Bettis, 139 Tenn., 335.

3. ANIMALS. Statute prohibiting running at large not repealed by statute defining lawful fences.

Priv. Acts 1919, chapter 651, defining lawful fences in counties of certain population without making it the duty of any person to maintain such fences or prescribing any advantage which a person shall have who maintains such a fence, did not effect applicability to such counties of Pub. Acts 1899, chapter 23, as amended by Pub. Acts 1901, chapter 114, prohibiting owner of stock from permitting stock to run at large. (*Post, pp.* 75, 76.)

Acts cited and construed: Acts 1919, ch. 651; Acts 1899, ch. 23; Acts 1901, ch. 114.

4: ANIMALS. Running at large not permitted by fence law.

Priv. Acts 1911, chapter 269, defining lawful fences in rural districts of particular county, did not permit owner of stock to allow stock to run at large in such sections of the county in violation of Pub. Acts 1899, chapter 23, as amended by Pub. Acts 1901, chapter 114. (*Post, pp.* 76, 77.)

5. STATUTES. Repeal by implication only to extent that statutes are irreconcilable.

A later act does not repeal or cut down an older one by implication, unless and only to the extent that their provisions are necessarily irreconcilable. (*Post, pp.* 76, 77.)

6. INJUNCTION. Owner of stock will be restrained from permitting stock to run at large on complainant's farm to injury of crops.

Bill to enjoin owner of stock from permitting stock to run at large upon complainant's farms, alleging that plaintiff's crops would be

destroyed by such stock to his irreparable damage, *held* sufficient to invoke the injunctive aid of equity. (*Post, p.* 77.)

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County. —HON. W. B. GARVIN, Chancellor.

J. B. SIZER and W. G. M. THOMAS, for J. E. Folkner.

MILLER & BALLARD and W. T. MURRAY, for C. F. Whitehurst et al.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The bill was filed in this cause for the purpose of enjoining and restraining the defendants from permitting their stock to run at large upon the farms, premises, and crops of the complainant. The bill was filed against two defendants, Whitehurst, the owner of the farm, and of the offending stock, who resides in Pennsylvania. His farm adjoins the farm of the complainant. The other defendant, Hixon, is Whitehurst's farm superintendent, who resides upon the farm and operates it for Whitehurst.

The bill charges that—

"By chapter 23 of the Acts of 1899, amended by chapter 114 of the Acts of 1901, it is the law everywhere within the limits of Hamilton county, Tenn., that stock shall not run at large; and it is made unlawful for any owner of any horses, cows, sheep, goats, or hogs, or any other live stock, knowingly to permit the same to run at large with-

in the limits of said county; that any person violating this act is guilty of a misdemeanor, and, on conviction, is made subject to a fine of from $5 to $15, and is made liable for all damages done the property of others while any of such stock may be running at large within the county, and, in addition to such liability, the person damaged is given a lien on the animal doing the damage, and he may enforce the lien by attachment."

That, among other personal property owned by Whitehurst and on his farm, are a number of head of hogs, and these the defendants turn out to run at large, and knowingly and intentionally permit them to run at large, and in and upon the farm, premises, and property of the complainant and others, in violation of law and to complainant's injury and damage.

That defendants not only willfully turn out said stock, but knowingly and willfully permit them to run at large, and in and upon complainant's farm, fields, premises, and crops thereon, but they willfully disregard, violate, and set at naught said statute, and refuse to obey it. They know of the depredations of said stock upon the farm of complainant. They know of the damage and injuries done and being done to complainant, but they refuse to keep up said stock, and they persist in letting them run at large, and they refuse to obey said law; and they not only threaten, but they state their intention and purpose, to permit the continued running at large of said stock, and the continued injury and damage to complainant and others.

Folkner v. Whitehurst.

That the complainant sought to avoid the necessity of this suit by having the defendants to stop the violations of law, and to keep their stock from entering in and upon the property, but that they refuse, and they insist that they intend to continue their course of permitting the stock to run at large.

That money damages cannot and would not compensate complainant. Said stock not only have rooted up and are rooting up the land and crops, but are so injuring the lands as that new crops cannot this spring be planted, or, if planted, they will be so injured as that normal harvests, if any harvest at all, will not, and cannot, be realized from them; and such losses to complainant cannot be ascertained, declared, or allowed, or adequately compensated for, by any rule of law. Complainant's injuries and damages are irreparable, and will continue to be irreparable; and in addition to all this, even were the damages not irreparable, it would necessitate a multiplicity of suits to enforce the same; that complainant's only full, adequate, and complete remedy is an appeal to this court for an injunction to stop the further continuance of the wrongs.

That the General Assembly of 1919 passed an act, the same being chapter 651 of the Private Acts of that session, entitled:

"An act to fix, define and establish a lawful fence in counties of this State having a population of not less than 70,000 nor more than 90,000 inhabitants, according to the federal census of 1910 or any subsequent federal census, except within the corporate limits of county sites of counties falling within the provisions of this act."

The body of the act provides, without more, that certain kinds of fence shall be a lawful fence. The only repealing clause is: "That all laws and parts of laws in conflict with the provisions of this Act be, and the same are hereby repealed"—and the last section provides: "That this act take effect from and after March 1, 1920."

That this alleged act of 1919, if it ever became a law, did not, by its express terms, until March 1, 1920; that it never did, and does not, apply to Hamilton county, because (1) on March 1, 1920, by the federal census of 1920, said county had a population of more than 90,000 inhabitants, and (2) under and by virtue of chapter 695 of the Acts of 1919 (passed April 14, 1919) the county of James was abolished and dissolved, and its territory and inhabitants transferred to Hamilton county, and prior to and by said March 1, 1920, the said James county had been abolished and the organization of its said territory and inhabitants as part of Hamilton county had been fully and completely executed and effected; and Hamilton county had a population of more than 90,000 inhabitants even according to the federal census of 1910.

That even though said act of 1919 applies to Hamilton county, which complainant denies, it in no manner touches or affects, or disturbs or repeals, the stock law aforesaid, either expressly or by implication; the repealing clause in it repeals nothing; and there is no repeal by implication, because there is no antagonism, repugnancy, or inconsistency whatsoever between it and the said stock law; and even though it be said that it applies, or can apply, to Hamilton county, the two laws would stand, one prohibit-

ing stock to run at large, and the other prescribing that certain fences are lawful fences, and that in every possible view of the case the defendant's acts aforesaid are unlawful.

That, in addition to the grounds of complaint aforesaid, and arising from, and growing out of, the conduct aforesaid of the defendants, complainant charges that he has the right to appeal to equity because the acts of the defendants:

(1)   Constitute an unlawful interference with his business, inflicting upon him money damages for which the remedy at law is inadequate;

(2)   Are trespasses upon his property, and their repetition would be continued trespasses, working not only injury to complainant, but permanent injury to him, and that he is entitled to an injunction to prevent irreparable mischief, and to suppress multiplicity of suits and oppressive and interminable litigation;

(3)   Commit waste, and are in destruction of complainant's means of subsistence, and the permanent ruin of his property and crops, and his loss of harvests and trade; and he comes into equity to remove the annoyance and stop the constantly recurring grievance.

(4)   Render it necessary that complainant and his property be protected pending the settlement by the court of the rights and liability of the parties.

That if the said chapter 651 of the Private Acts of 1919 applies to Hamilton county, and if the same can be so construed as to require the farmers and property owners to construct any of the kinds of fence described in said

act, the same is unconstitutional and void, for the reason that it would be so unjust and unreasonable in its appli-cation that it would result in depriving the complainant and others of their property without due process of law, and without adequate compensation. And in this connection complainant shows that after the passage of the act of 1899, hereinbefore referred to, the fences around the farming lands in Hamilton county were removed and permitted to run down; and now to require the property owners to refence their property would in the first place require almost, if not altogether, a physical impossibility, because of the difficulty, and real impossibility, in obtaining the labor and material necessary, and, in the second place the expense of fencing would be so great that it would be wholly out of proportion to the value of the land, and in many cases the cost of fencing would exceed the value of the land.

The defendant demurred on the following grounds:

(1)   The Act of 1899, chapter 23, amended by chapter 114 of the Acts of 1901, has been repealed and suspended by subsequent legislation, and it is not in effect in Hamilton county.

(2)   The bill does not show that the complainant keeps a lawful fence around his farm premises; but it shows that he does not keep and maintain a lawful fence.

(3) Private Acts of 1919, chapter 651, does apply to Hamilton county.

(4)   This Act of 1919, chapter 651, is not void or unconstitutional.

(5) This Act of 1919, chapter 651, does apply to Hamilton county, because the census of 1920 will not be in operation until published and promulgated.

(6) This Act of 1919, chapter 651, does apply to Hamilton county, because the James County Abolishment Act did not become effective until after chapter 651 of the Act of 1919 went into effect.

(7) This Act of 1919, chapter 651, does apply to Hamilton county, because it did take effect from its passage, and the James County Act took effect thereafter.

(8) This Act of 1919, chapter 651, does apply to Hamilton county, because it took effect under the census of 1910, and that census was not affected by the James County Abolishment Act.

(9) This Act of 1919, chapter 651, repealed or suspended all former law affecting fences, and the running at large of stock, and it is the law governing the defendant's stock.

(10) The bill is devoid of equity, and contains no facts upon which it can be sustained.

The chancellor filed a written opinion, which is clear and concise, and which we adopt as the opinion of this court, as it meets our approval, and which is as follows:

"Under the common law, the owners of land were under no obligation to keep their premises safe from trespassing animals belonging to others but 'a man was answerable for the trespass of his cattle if by his negligent keeping they stray upon the land of another (and much more if he permit or drive them on), and they tread down his neighbor's herbage or spoil his corn or his trees.' 3 Black-

stone, 211; *Chemical Co.* v. *Henry,* 114 Tenn., 152, 85 S. W., 401.

"In Tennessee the Act of 1807, carried into the Code of 1858 as sections 1682-1685, made it the duty of every planter to make a fence about his cleared land in cultivation sufficient not only to turn horses and cattle, but to prevent hogs from passing through, and provided that when trespass shall have been committed by horses, cattle, or hogs upon the cleared and cultivated land of any person, the owner of the animals shall make satisfaction to the owner of the land, for the damage done, if the fence was sufficient, but shall not be liable to make satisfaction if the fence was not sufficient.

"While this law merely declared it to be the duty of the landowners to protect their crops, and provided no penalty for their failure to do so, yet under the operation of the law planters found themselves under the necessity of fencing their lands, since otherwise they were without any remedy for the damages that might be done by their neighbor's trespassing animals.

"Chapter 23 of the Acts of 1899 evidenced the adoption of the rules of the common law in the counties of the State to which it applies, and added provisions for making the same more effective. By that act, as amended by chapter 114 of the Acts of 1901, the running at large of stock of all kinds were expressly prohibited in counties having a population of 72,000 or more by the federal census of 1890, or any subsequent federal census. For an owner of stock knowingly to permit the same to run at large in said counties was declared to be a misdemeanor punishable by fine;

and for all damages done by the stock so running at large
in said counties the owner was both made individually lia-
ble, and the stock subjected to a lien to be enforced by at-
tachment.   The act declared upon its face that its purpose
was to prevent the 'necessity' of fencing lands in the coun-
ties to which it was applicable.   Its effect was to repeal
the aforesaid sections 1682-1685 of the Code by necessary
implication in said counties, since the 'necessity' for the
fencing of lands arose from the said sections. This act came
before the Supreme Court in the case of *Peterson* v. *State*,
104 Tenn., 127; 56 S. W., 834, where its constitutionality
was sustained, and the policy of it was stated as follows:

"'While counties are thinly populated, and embrace
within their limits extensive tracts of timbered and un-
cultivated land, there is no essential reason why the
owners of cattle should keep them within inclosures.
These large tracts afford fine pasturage, which would run
to waste were not cattle permitted to run at large. In ad-
dition, in such counties timber for fencing purposes is as
cheap as it is abundant. Then the farmer who desires to
protect his crops has but to fell and split the trees in order
to get all the material necessary to make his inclosure;
but it is otherwise in the thickly settled counties. As popu-
lation has increased, the lands have been denuded of their
forest. and wide areas have been converted from wild
land into cultivated fields. It is a matter of common obser-
vation that in such a county it has become a serious eco-
nomic problem to the farmer to secure his growing crops
from the depredation of vagrant stock. With diminishing
forests and increasing cost of fencing material, it is an

annual burden, getting heavier all the time, to provide suitable protection, against these recurring invasions. The legislature, recognizing the wide difference in these two conditions, and, we think, in the counties provided for, wisely placed the duty of looking after cattle rather upon their owner than upon the owners of farms.'

"The act of 1899 as originally enacted applied to all counties in the State having a population of 59,000 or over by the federal census of 1890, or any subsequent census. Because the population of Hamilton county, according to the federal census of 1890, was only 53,482, the act as originally passed did not apply to this county.

"The census of 1900 gave Hamilton county a population of 61,695 which would have brought the county under the act, but this census was not officially announced, and therefore did not become effective until December 6, 1901, and in the meantime, to wit, on March 28, 1901, the act was amended by chapter 114 of that year, raising the limit of population from 59,000 to 72,000, so that from and after that date the act only applied to counties having a population of 72,000 and over by the federal census of 1890 or subsequent census. The result of this was again to leave Hamilton county outside of the act. But by 1910 Hamilton county had attained a population of 89,267 according to the federal census of that year. This population being in excess of the limit of 72,000 fixed by the act of 1899 as amended by the act of 1901, Hamilton county was thereby obviously brought under the act, unless there was in the meantime other legislation which prevented this result Counsel for the defendants insist that there was such other

legislation, and point to chapter 504 of the Acts of 1905 and to chapter 269 of the Acts of 1911. The former of these was an act which defined and declared a four-wire fence to be a lawful fence in counties having a population of not less than 60,000 nor more than 72,000 by the federal census of 1900 or by any subsequent federal census, except in incorporated towns and cities.

"It applied to Hamilton county, whose population by the federal census of 1900 was 61,695. The latter act (chapter 269 of the Acts of 1911) was a re-enactment, word for word, of the act of 1905, except that it was made to apply to counties having a population of not less than 70,000 nor more than 90,000 by the federal census of 1910 or any subsequent federal census except in incorporated towns and cities. This act likewise applied to Hamilton county, and apparently anticipated the result of the census of 1910, which when officially announced in December 1911 showed the population of the county to be 89,267. Both acts gave to the landowner who maintained the fence prescribed by the act a remedy individually against the owner of trespassing stock and a lien upon the stock as well, which was enforceable either by attachment or by judgment and execution.

"It is the insistence of counsel for the defendants that because these last two mentioned acts were passed and became effective before the act of 1899 became applicable to Hamilton county they prevented the latter act from ever taking effect in this county, but this cannot be so, unless the act of 1911 (or its prototype the act of 1905) by implication repealed the act of 1899 in whole or in part. If

the act of 1911 did not repeal the act of 1899 in whole or in part, then it is immaterial whether it was passed before or after Hamilton county attained the population requisite to bring it under the act of 1899. For the proposition that the act of 1911 (and by consequence the act of 1905) did not repeal the act of 1899 we have the express authority of our Supreme Court in the case of *Chattanooga Ry. & Light Co.* v. *Bettis,* 139 Tenn., 335, 202 S. W., 70, in which the court said:

" 'We do not agree with the lower courts that the act of 1911 worked a repeal . . . of the act of 1899. The act of 1899 applies to all of Hamilton county and to the other larger counties of the State. The act of 1911 only applies to the rural districts of Hamilton county, the incorporated towns in that county being excepted from its provisions, so that the two statutes do not cover the same field. Just how far the earlier act is modified by the later one we do not feel called upon to determine in this case.'

"It being thus settled that the act of 1911 did not work a repeal of the act of 1899, and that the latter act became applicable to Hamilton county. the result is, as above shown, that sections 1682-1685 of the Code were repealed in the county from and after the census of 1910. This being so, the much-discussed act of 1919, even if it applies to this county, can derive no aid from the provisions of those sections. and must stand alone upon its own provisions; but this act has no provisions, except a declaration that certain fences (all of them hog-tight) shall be lawful fences in counties having a population of not less than 70,000 nor more that 90,000. It does not declare it to be the duty of anybody, whether the landowner or the

stock owner or other person, to maintain the fences described in the act, or prescribe any advantage which a person shall have who maintains such a fence or any disadvantage he shall suffer if he fails to maintain such a fence. Nor is there any other legislation to which reference can be had to supply these omissions, since the Code provisions are no longer in force in this county. It would seem therefore that the act is merely an empty declaration. Certainly, if the act of 1911 did not work a repeal of the act of 1899 this act of 1919 did not.

"Since the act of 1911 and the act of 1899 both apply to the rural districts of Hamilton county, it is necessary to inquire whether the later act so modified the earlier one as to permit the running at large of any kind of stock in those parts of the county. I do not think it did. The act of 1899 expressly prohibits the running at large of all classes of stock. The act of 1911 does not expressly permit the running at large of any class of stock, and does not expressly require a landowner to maintain the fence prescribed by the act, or, if he fails to do so, deprive him of the remedy offered by the act of 1899. It does, however, provide additional remedy in the enforcement of his lien if he maintains the fence prescribed by the act. This additional remedy, it must be conceded, is of slight value to the landowner, and would hardly be an inducement for him to build a fence around his cultivated land. Nevertheless, it affords a basis upon which both acts can stand together, and be operative in all their provisions. The rule is that a later act is not to be held to repeal or cut

Folkner v. Whitehurst.

down an older one by implication unless and only to the extent that their provisions are necessarily irreconcilable.

"The result is the demurrer is overruled.

"I am authorized to say that Judges McReynolds and Yarnell, who did me the honor to sit with me upon the hearing of the demurrer, concur in this opinion.

Garvin, Chancellor."

In addition to the foregoing, we might also add that the bill is sufficient in its averments to invoke the injunctive aid of a court of equity.

We find no error in the decree of the chancellor, and same will be affirmed with costs.

The decree of the chancellor in the companion case of *H. H. Hampton, etc.,* v. *Gus Hardy,* will likewise be affirmed with costs.