STATE, *ex rel.* ARTHUR RICHARDSON, v. EMMETT FERRELL, as Sheriff of Wakulla County.

177 So. 181.

Division B.

Opinion Filed November 6, 1937.

*Clyde W. Atkinson* and *J. Lewis Hall,* for Petitioner;

*Cary D. Landis, Attorney General,* and *Tyrus A. Norwood,* Assistant Attorney General, for Respondent.

CHAPMAN, J.—Petitioner, Arthur Richardson, on the 7th day of October, 1937, filed in this Court his petition for a writ of habeas corpus, alleging, among other things, that on the 4th day of October, 1937, T. B. Oppert made affidavit before R. E. Chapman, Justice of the Peace of the 2nd District of Wakulla County, Florida, charging your petitioner with the crime commonly known as gambling. That a warrant issued thereon and petitioner was arrested on the 5th day of October, 1937. Upon arraignment before R. E. Chapman, as Justice of the Peace of the 2nd District of Wakulla County, Florida, then and thereto, to said charge made and entered his plea of guilty.

The Justice of the Peace on October 5, 1937, issued a commitment directed to the Sheriff of Wakulla County commanding him to commit your petitioner to the common jail of Wakulla County, Florida, then and there to be safely kept and to await and to attend the then next term of the County Judge's Court in and for Wakulla County, Florida, to then and there have the aforesaid cause, formerly pending, in the Justice of the Peace Court of the 2nd District in and for Wakulla County, Florida, disposed of according to law.

On October 7, 1937, a writ of habeas corpus issued out of this Court directed to Emmett Ferrell, as Sheriff of Wakulla County, Florida, respondent, commanding him to produce immediately the body of the petitioner, Arthur Richardson, and that he then and there show cause why he holds him in custody.

On the 11th day of October, 1937, the Sheriff of Wa-

kulla County, Florida, filed a return and attached thereto a copy of the commitment issuing out of the Justice of the Peace Court of the 2nd District of Wakulla County, Florida, directing that he keep in his custody the petitioner for the purpose of trial before the County Judge's Court of Wakulla County at the term next ensuing, on the aforesaid criminal charge previously existing in the Justice of the Peace Court of the 2nd District of Wakulla County, Florida.

It is admitted that the Justice of the Peace Court of the 2nd District in and for Wakulla County, Florida, is deprived of its jurisdiction to try said cause and the trial jurisdiction thereof transferred to the County Judge's Court in and for Wakulla County, Florida, because of Senate Bill No. 150, approved by the Governor on June 2, 1937, viz.:

"Senate Bill No. 150.

"An Act to Amend Section 5995, Revised General Statutes of Florida, 1920, Same Being Section 8289, Compiled General Laws of Florida, 1927, the Same Being Laws Fixing and Prescribing the Power and Jurisdiction of Justices of the Peace to Try and Determine Misdemeanors committed in Their Respective Districts. The Effect of This Act Being to Abolish Trial Jurisdiction of Misdemeanors in Justices of Peace, and to Vest Same in County Judge; and Providing that all Proceedings Now Pending in the Justice of the Peace Courts shall Not Be Affected by this Act, and Making Certain Exemptions for Counties in Specified Classifications.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF FLORIDA:

"SECTION 1. That Section 5995, Revised General Statutes of Florida, 1920, same being Section 8289, Compiled General Laws of Florida, 1927, be and it is hereby amended to read as follows:

" 'In Counties where there are no County Courts or Criminal Courts of Record, the County Judges shall have power to hold a Court to try and determine all misdemeanors committed in their respective counties, punishable by fine not exceeding Five Hundred ($500.00) Dollars or by imprisonment not exceeding six (6) months, or by both such fine and imprisonment.'

"SECTION 2.   Nothing contained in this Act shall be construed to in any wise affect the present criminal jurisdiction of Justices of the Peace in any County of the State of Florida having a population of over 50,000 according to the last preceding State census.

"SECTION 3.   That all proceedings or cases now pending in the Justice of the Peace Courts shall not be affected by the provisions of this Act.

"SECTION 4.   That all laws and parts of laws in conflict herewith are hereby repealed.

"SECTION 5.   This Act shall take effect immediately upon its passage and approval by the Governor, or upon its becoming a law without such approval."

It is here contended that Senate Bill No. 150, *supra,* is void and violates the constitutional rights of petitioner for the following reasons, viz.:

"(a) That said Act is unconstitutional and void for that it regulates a class and certain number of Justices of the Peace of the State of Florida in violation of Section 20, Article III, of the Constitution of the State of Florida, which provides that no special law shall be passed regulating the jurisdiction and duties of any class of officers.

"(b) That said Act is a special law and is unconstitutional and void for the reason that it attempts to regulate a certain class of the Justices of the Peace in violation of Section 20, Article III, of the Constitution of the State

of Florida, which provides that no special law shall be passed regulating the punishment of crime or misdemeanor.

"(c) That said special Act is unconstitutional and void for the reason that it attempts to regulate the practice of Courts of Justices in violation of Section 20, Article III, of the Constitution of the State of Florida.

"(d) That said Act is unconstitutional and void for the reason that it attempts to change the venue of criminal cases in violation of Section 20, Article III, of the Constitution of the State of Florida.

"(e) That said Act violates Section 11, Article V, of the Constitution of the State of Florida, in that it deprives the Circuit Court of exclusive original jurisdiction on appeal of all cases arising before Justices of the Peace in Counties in which there is no County Court."

The Constitution of Florida provides that a Justice of the Peace shall hold his office for four years and that the County Commissioners of each county shall divide it into as many Justice Districts as may be necessary, but not less than two. Section 21, Article V, of the Constitution of Florida. Provisions likewise appear in the Constitution as to the civil and criminal jurisdiction of a Justice of the Peace, and Section 22 of Article V of the Florida Constitution provides:

"The Justices of the Peace shall have jurisdiction in cases at law in which the demand or value of the property involved does not exceed $100.00, and in which the cause of action accrued or the defendant resides in his district; and in such criminal cases, except felonies, as may be prescribed by law, and he shall have power to issue process for the arrest of all persons charged with felonies and misdemeanors not within his jurisdiction to try, and make the same returnable before himself or the county judge for examina-

tion, discharge, commitment or bail of the accused. Justices of the Peace shall have power to hold inquests of the dead. Appeal from Justices of the Peace Courts in criminal cases may be tried *de novo* under such regulations as the Legislature may prescribe."

It is contended that the Act, *supra,* is void and violates the constitutional rights of the petitioner for the reason, or reasons, *supra.*

An unbroken line of decisions of this Court hold that the power of the Legislature of a State to enact laws is always subject to the provision and limitations of our organic law and it is the duty of the courts to uphold duly enacted statutes unless it is made to appear beyond all reasonable doubt that it conflicts with some identified or designated provision or provisions of our organic law. See: City of Jacksonville v. Bowden, 67 Fla. 181, 64 Sou. Rep. 769, L. R. A. 1916 D 913, Ann. Cas. 1915 D 99; Lainhart v. Catts, 73 Fla. 735, 75 Sou. Rep. 47; Prettyman v. Florida Real Estate Commission, 92 Fla. 515, 109 Sou. Rep. 442.

It will be observed that the Florida Legislature has, from time to time, enacted laws controlling the jurisdiction of Justices of the Peace in criminal matters and was authorized so to do under Section 22 of Article V of the Florida Constitution. The Act before us treats of the jurisdiction of Justices of the Peace in criminal matters in those counties of Florida having a population of 50,000 or less, according to the last preceding State census. It does not attempt to control the jurisdiction of Justices of the Peace in criminal matters in counties of Florida having a population of 50,000 or more, according to the last preceding State census. It is urged here that it is a special law in its application and is void and conflicts with Section 20, Article III, of the Florida Constitution because it regulates or attempts to

regulate the jurisdiction and duties of a certain class of officers, to-wit: Justices of the Peace in counties having a population of 50,000 or less. It cannot be overlooked here that Section 22 of Article V of the Constitution clothes the Legislature with power and authority to enact laws controlling the jurisdiction of Justices of the Peace in "all criminal cases" except felonies. The power or authority to enact such a law as is here in question having been settled, let us determine whether or not it is a general or special law.

This Court, in the case of State, *ex rel.* Buford, v. Daniel, 87 Fla. 270, 99 Sou. Rep. 804, in construing Chapter 9274, Acts of 1923, wherein a population classification existed as follows:

Section One. "There is hereby created a County Welfare Board in each County of Florida having a population of 100,000 according to the last Federal census," the Act was sustained when its application was but to Duval County and language was used, viz.:

"The Governor's appointing power is not unduly limited by the requirement that five men and four women shall be appointed on the County Welfare Boards.

"The Constitution in Sections 20 and 21, Article III, provides that 'the Legislature shall not pass special or local laws regulating the jurisdiction and duties of any class of officers, except municipal officers, for assessment and collection of taxes for State and County purposes,' and that such 'laws shall be general and of uniform operation throughout the State.'

"In providing that 'the Legislature shall not pass special or local laws' in any of the 'enumerated cases,' and that in all such cases all laws 'shall be general and of uniform operation throughout the State, the Constitution distinguishes

between 'special or local laws,' and laws that 'shall be general and of uniform operation throughout the State' without defining either class of laws; but generality and uniformity of operation do not forbid reasonable classifications; and the legality of a legislative classification depends upon its reasonableness with reference to the nature of the subject upon which the law is to operate. State, *ex rel.* Buford, v. Shepard, 84 Fla. 206, 93 South. Rep. 667.

"Chapter 9274 is not a 'special or local law,' for the reason that it is a law based upon a proper classification that is potentially applicable throughout the State, in that any county may acquire a population of over 100,000, though only one county may now be in that class. The provision 'according to the last Federal census' is progressive and has reference to each Federal census as it occurs. *Ex Parte* Wells, 21 Fla. 480; State, *ex rel.* Lamar, v. Jacksonville Terminal Co., 41 Fla. 363, 27 South. Rep. 221; Collier v. Cassidy, 63 Fla. 390, 57 South. Rep. 617; Givens v. Hillsborough County, 46 Fla. 502, 35 South. Rep. 88; Whitaker v. Parsons, 80 Fla. 352, 86 South. Rep. 247; Carlton v. Johnson, 61 Fla. 15, 55 South. Rep. 975; Fine v. Moran, 74 Fla. 417, 77 South. Rep. 533; Bloxam v. Florida Cent. & P. R. Co., 35 Fla. 625, 17 South. Rep. 902; Harwood v. Wentworth, 162 U. S. 547, 16 Sup. Ct. Rep. 890; *Ex Parte* Loving, 178 Mo. 194, 77 S. W. Rep. 508; State, *ex rel.,* v. Condon, 108 Tenn. 82, 65 S. W. Rep. 871; Cook v. State, 90 Tenn. 407, 16 S. W. Rep. 471; Archibald v. Clark, 112 Tenn. 532, 82 S. W. Rep. 397; City of Indianapolis v. Navin, 151 Ind. 139, 47 N. E. Rep. 525, 51 N. E. Rep. 80, 25 R. C. L. 818, 227 U. S. 51, Ann. Cases 1915 B 968, 124 Tenn. 235.

"Uniformity of operation throughout the State does not require universality of operation throughout the State.

The former relates to similarity of conditions affecting subjects or localities of the State that are appropriately classified. The latter relates to the whole and every part of the State.

"A statute relating to subdivisions of the State or to subjects or to persons or things as a class based upon proper distinction and differences that inhere in or peculiar or appropriate to the class, is a general law; while a statute relating to particular subdivisions or portions of the State or to particular places of classified localities, is a local law; and a statute relating to particular persons or things or other particular objects of a class, is a special law. See 17 Fla. 238.

"Classifications of counties for governmental purposes based upon population is permissible in enacting general laws. Clark v. Finley, 93 Tex. 171, 54 S. W. 343; Farnum v. Warner, 104 Cal. 677, 38 Pac. Rep. 421; Thomas v. State, 136 Tenn. 47, 188 S. W. Rep. 617; State v. Ames, 91 Minn. 365, 98 N. W. Rep. 190; Hall v. State, 124 Tenn. 235, 137 S. W. Rep. 500; Russell v. Esmeralda County, 32 Nev. 304, 107 Pac. Rep. 890; Murphy v. State, 114 Tenn. 531, 86 S. W. Rep. 711; Cooper v. Rollins, 152 Ga. 588, 110 S. E. Rep. 726, 20 A. L. R. 1105; Commonwealth v. Blackley, 198 Pa. 372; 47 Atl. Rep. 1104."

In the suit of State v. Jacksonville Terminal Co., 41 Fla. 363, text p. 371, 27 South. Rep. 221, the Court had before it the constitutionality of Chapter 4700, Laws of 1899, giving the Railroad Commission certain additional powers and the constitutionality of the Act was questioned on the ground, among others, "that it was a special law in its application" because no provision or method for an appeal existed either by appeal or writ of error, and the Court in sustaining the Act said:

"It is also contended that this section violates Section 20 of Article III of our State Constitution, that prohibits the Legislature from passing special or local laws regulating the practice in courts of justice. This contention is also untenable. In *Ex Parte* Wells, 21 Fla. 280, this Court, after reviewing many authorities therein cited, decided, in effect, that the constitutional limitation invoked did not prohibit the reasonable classification of persons and things, and that such classification does not depend, for its propriety, upon numbers, and that a law that affected *all persons or things of a class* was a general and not a special law. The quoted section of the Act, under which this writ of error was issued and made returnable, out of the usual time prescribed for the return of similar writs in ordinary cases, groups together, *as a class, all cases* brought under the provisions of the Act of which it forms a part, and makes the appeals (used in its generic sense) *in all of them,* returnable within thirty days, irrespective of the kind, or nature of the case. The distinguishing feature of the *class* of cases thus provided for is that they must have been 'brought under the provisions of said Act'—Chapter 4700."

In the case of State, *ex rel.* Buford, v. Shepard, 84 Fla. 206, text p. 216, 93 Sou. Rep. 667, the Court had before it a statute regulating fees of county officers and the Act was questioned because it was a special, and not a general law, and the Court said:

"In providing that 'the Legislature shall not pass special or local laws' in any of the 'enumerated cases' among which 'cases' is 'regulating the fees of officers of the State and county,' and that in all such cases all laws 'shall be general and of uniform operation throughout the State,' the Constitution distinguishes between 'special or local laws,' and laws that 'shall be general and of uniform operation through-

out the State' without defining either class of laws; but generality and uniformity of operation do not forbid reasonable classifications, and the legality of a legislative classification depends upon its reasonableness with reference to the nature of the subject upon which the law is to operate. A classification may be reasonable and practicable as applied to one subject, and yet be arbitrary, unjust and impractical as applied to another subject of legislation. Likewise, one classification of a subject may be arbitrary while another classification may be reasonable, practical and properly predicated on the subject.

"The Legislature does not create, but designates and classifies, subjects of legislation. It enacts provisions that operate upon designated and classified subjects. Provisions of a law may be general and of uniform operation throughout the State, if they operate upon a designated subject or upon a classification wherever it shall exist or may appear in the State. A law may be general and of uniform operation throughout the State, even though the conditions of the subject upon which it operates do not exist in all parts of the State; if it operates uniformly upon the specified subject and conditions wherever they exist in the State, the law may be general and not special or local.

"The manifest intent of the organic provisions contained in Sections 20 and 21, Art. III, is that laws enacted in the 'cases' mentioned shall not be 'special or local,' that is, in their operation shall not be made potentially or specifically applicable to special cases or to only a portion or to some portions of the State when they can be made general to operate throughout the State. If by its terms or necessary effect and intent, a law regulating the fees of State and county officers, can operate only in certain portions of the State though the conditions are similar throughout the

State, or the law cannot at any time apply to the same subject matter under similar conditions that do exist or that may hereafter exist in the other portions of the State, the law may be regarded as special or local. But if the law is fairly capable of general and uniform operation and is potentially applicable throughout the State whenever the circumstances and conditions, as stated in the legislative enactment, that are reasonably and properly classified and provided for, may come into existence, the law may be regarded as being general and of uniform operation throughout the State, within the intent of the Constitution, even though when enacted all or some of the provisions of the law could not operate in all counties of the State, because similar subjects do not exist or the classified conditions had not then arisen in some counties. See *Ex Parte* Wells, 21 Fla. 280; Givens v. Hillsborough County, 46 Fla. 502, 35 South. Rep. 88; Carlton v. Johnson, 61 Fla. 15, 55 South. Rep. 975; Collier v. Cassady, 63 Fla. 390, 57 South. Rep. 617; Bloxham v. Florida Cent. & P. R. Co., 35 Fla. 625, 17 South. Rep. 902, 94 U. S. 155."

In the suit of Beasley v. Cahoon, 109 Fla. 106, text pages 119-20, 147 Sou. Rep. 288, the Court had before it the constitutionality of an Act applying to all counties of Florida having a population of more than 40,000 according to the 1925 census or any subsequent census and the same was sustained against an attack as a special law and as constitutional on a basis of applying to counties of Florida having more than 40,000 people, and Mr. Justice WHITFIELD, speaking for the Court, said:

"The statute does not apply 'to counties having a population of less than forty thousand, taken from 1925 census or any subsequent census.' The organic sections require laws 'for the punishment of crime or misdemeanor' to be

of "uniform operation throughout the State,' but do not require such laws to be of *universal* operation, and permits classifications of subjects for statutory regulation by general laws, when the classification has a basis in real differences of conditions affecting the subject regulated, and the classification applies in general to all similarly conditioned with reference to the subject regulated; and a classification may be based upon the population of counties, even though the Act does not embrace all counties that could have been included, or omits some that need but do not have statutory regulation, where the classification made is not merely capricious. State, *ex rel.,* v. Daniel, 87 Fla. 270, 99 So. 804; Sparkman v. Co. Budget Com., *et al.,* 103 Fla. 242, 137 So. 809. This Act requires that exercise of a governmental function in licensing and regulating the business of making small loans, and is designed to remedy an evil which the Legislature conceivably and reasonably found to exist chiefly in the more populous counties of the State. This renders the classification valid, even though the evil also exists and is unregulated in other counties to which the Act does not apply. The statute is potentially applicable to every county of the State. Collier v. Cassady, 63 Fla. 390, 57 So. 617; Sparkman v. Co. Budget Com., *et al.,* 103 Fla. 242, 137 So. 809."

The rule enunciated by the citations above shown is supported by the authorities of other jurisdictions. In Lewis' Sutherland Statutory Construction, Volume 1 (2nd Ed.) page 349, it was said:

" 'That a law of general nature must concern a subject matter existing and capable of uniform operation throughout the State cannot be denied; for if the law from the nature of its subject matter is not susceptible of an operation throughout the State, it cannot, within the meaning

of the Constitution, be a law of a general nature. But it by no means follows that all laws pertaining to a general subject matter, and susceptible of a uniform operation throughout the State, are laws of a general nature in the constitutional sense of that term.' Such differences of details were held not to affect the constitutionality of the law. The requirement was intended by such uniformity of operation to prevent the granting to any citizen or class of citizens of privileges or immunities which upon the same terms shall not belong to all citizens."

In the authority last cited at paragraph .217, pages 404 to 407 of Volume 1 a basis classification of many subjects is recited that puts at rest the question raised here, viz.:

"217. CLASSIFICATION OF COUNTIES AND LEGISLATION IN RESPECT THERETO.—Counties may be classified according to population on the same principles as apply to municipalities for the purpose of legislation having a necessary relation to population. The Supreme Court of Pennsylvania, after referring to the principles applicable to the classification of cities, says: 'The same principle must make classification constitutional as to other political and municipal divisions of the State when considered in their governmental capacity. Classification of counties is therefore as permissible as classification of cities, and the Legislature may determine what differences in situation, circumstances and needs call for a difference of class, subject to the supervision of the courts as the final interpreters of the Constitution to see that it is actual classification, and not special legislation under that guise.'

"If the classification is founded on correct principles, it is no objection that a class may contain but one county at the time the Act is passed. An Act relating to the fees of county officers applied to counties of over 100,000 popu-

lation and not more than 185,000, of which there was only one. The Act was assailed on the ground particularly that it did not include all counties over 100,000. But the court held it could not say that there was no ground for a distinction and sustained the Act. An Act regulating fees of county officers except in counties containing more than 150,000 inhabitants or less than 10,000 was held to be not classification, but a mere exclusion of certain counties and void. An Act applicable to counties having a population of from 35,190 to 35,200 was held evasive and special.

"Classification by population has been held proper for the purpose of regulating the fees and compensation of county officers, for regulating the manner of selecting jurors, for preventing stock from running at large, for regulating the manner of assessing property for taxation, providing for laying out and regulating the public roads, and for the administration of county affairs. An Act providing for the Torrens system of registering land titles, applicable only to counties having over 75,000 inhabitants, was held valid. An Act to provide for the treatment of indigent inebriates at the public expense in counties of 50,000 population or more was held special and void. Counties may be classified according to assessed valuation for the purpose of regulating the fees of county officers."

Senate Bill No. 150, approved by the Governor on June 2, 1937, and Section 1 thereof as enacted by the Legislature of 1937, had as its purpose the change, repeal or amendment of Section 8289 C. G. L., and substitute therefor Section 1, *supra*. The Legislature under the Constitution of Florida had the power or authority to take the trial jurisdiction of misdemeanors, where the punishment therefor by fine should not exceed $500.00 or imprisonment not to exceed six months or both such fine and imprisonment, from Jus-

tices of the Peace and place the trial jurisdiction thereof in the county Judge's Court in Counties of Florida under 50,000 population according to the last preceding State census where no County Courts or Criminal Courts of Record existed. See Jackson v. State, 33 Fla. 620, 15 Sou. Rep. 250.

Consideration has been given to the contention of counsel that the Act deprives the Circuit Court of exclusive original jurisdiction on appeal of all (criminal) cases arising before Justices of the Peace in which there is no County Court. It cannot be overlooked that if the criminal jurisdiction described in the Act before the Court is transferred to the County Judge's Court there will be but little or no necessity for appeal from the Justice of the Peace Court to the Circuit Court, but such rights are fully protected in appeal in criminal cases from the County Judge's Court to the Circuit Court. See: State v. Bullock, 58 Fla. 534, 50 Sou. Rep. 418; Benton v. State, 74 Fla. 30, 76 Sou. Rep. 341. It has not been made to appear here that the interest of this petitioner will be affected because the criminal suit against him as pending in the County Judge's Court of Wakulla County. We have searched the brief of counsel for petitioner for citations of authorities sustaining this contention without avail.

In the case of State v. Philips, 70 Fla. 340, 70 Sou. Rep. 367, Ann. Cas. 1918 A 138, it was by this Court held that the Legislature is presumed and intended to enact a valid and constitutional enactment and the contrary has not been made to appear in this case. This Court is not concerned with the wisdom, necessity or policy of the Legislature in enacting laws, but its responsibility is that of construction and interpretation. The petitioner is remanded to the custody of the Sheriff of Wakulla County to be controlled by

the commitment previously issued out of the Justice of the Peace's office of Wakulla County, Florida.

WHITFIELD, P. J., and BROWN, J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.